**In re Melvin Harris COHEN, Debtor.**

**W. Gary COLEMAN, Plaintiff,**

v.

**Richard D. ELLENBERG, Trustee of the Estate of Melvin Harris Cohen, Debtor, Defendant.**

**W. Gary COLEMAN, Plaintiff,**

v.

**Richard D. ELLENBERG, Trustee of the Estate of Melvin Harris Cohen, Debtor, Janice E. Cohen and Northside Family Planning Services, Inc., Defendant.**

**Bankruptcy No. 79–03518A.
Adv. No. 80–0327A.**

United States Bankruptcy Court,
N. D. Georgia,
Atlanta Division.

Oct. 29, 1980.

E. Lee Redfern, David W. Cranshaw, Hurt, Richardson, Garner, Todd & Cadenhead, Atlanta, Ga., for W. Gary Coleman, plaintiff.

J. Timothy White, Stacey W. Cotton, Cotton, Katz, White & Palmer, P.A., Atlanta, Ga., for defendants, Janice Cohen and Northside Family Planning Services, Inc.

Richard D. Ellenberg, Atlanta, Ga., Schultz, Ellenberg & Roberts, Atlanta, Ga., Trustee.

## ORDER

### STATEMENT OF THE CASE

W. H. DRAKE, Jr., Bankruptcy Judge.

On February 16, 1977, W. Gary Coleman (sometimes "Coleman"), the plaintiff herein, brought suit in Superior Court of Fulton County in aid of his execution and levy upon certain property pursuant to a default judgment previously entered against Melvin Harris Cohen (sometimes "Cohen"), the defendant herein. Coleman had directed the Sheriff of Fulton County to seize certificates representing 450 shares in a Georgia corporation known as Atlanta Hospital for Women, Inc. and 450 shares of stock in a Georgia corporation known as Northside Family Planning Services, Inc. in an attempt to satisfy the aforementioned default judgment.

Cohen filed an affidavit of illegality in the Superior Court of Fulton County from which the levy issued, and the matter was removed to this Court by notice of the trustee after Cohen filed his voluntary petition in bankruptcy in December of 1979. Cohen contends that Northside Family Planning Services, Inc. stock is not his and that the stock certificates are not subject to levy by Coleman because of a settlement agreement entered into between Cohen and Coleman dated April 19, 1978 whereby the judgment was made the subject of an accord and satisfaction. Cohen further contends that the purported tender by Coleman, made in an attempt to unilaterally rescind the settlement agreement, was defective in that it was an offer to tender and not an actual tender. Coleman acknowledges the existence of the settlement agreement, but contends that he had unilaterally rescinded the agreement because Cohen fraudulently induced him to enter into it by virtue of his failure to reveal assets in a post–judgment deposition taken in July of 1977. Coleman contends that his rescission of the agreement and offer to tender the money paid by Cohen under the settlement agreement permitted him to reactivate the judgment and direct the Sheriff to attempt to enforce the judgment fi. fa. by levying on the stock certificates.

The record is undisputed that Cohen was not in default under the payout arrangement set forth in the settlement agreement of April 19, 1978, and that Cohen had made the monthly payments called for thereunder until the last payment was returned by Coleman's counsel by letter dated May 16, 1979. The issues were tried to the Court on July 29, 1980 and the matter taken under advisement.

### FINDINGS OF FACT

#### 1.

Defendant Northside Family Planning Services, Inc. (hereinafter "NFPS, Inc.")

was formed by Melvin H. Cohen and Dr. Lawrence D. Baker in 1973. The initial capitalization was $500 each in exchange for 500 shares of common stock each. T–22, D–1.

2.

Melvin H. Cohen did not transfer the 500 shares of NFPS, Inc. to his wife Janice Beth Epstein Cohen (hereinafter sometimes "Janice Cohen") for Three Thousand Five Hundred ($3,500) Dollars in June 1974. T–25, 170.

3.

The testimony at trial as to the occurrence of this transaction was contradictory. T–25, 138, 170, 279.

4.

A check drawn by Janice Cohen on a savings account held jointly by Janice and Mel Cohen endorsed in blank by Janice Cohen to Tecalli Apartments carried no indication that it was in consideration for the alleged stock transfer. D–12.

5.

The two buy–sell agreements prepared in 1975 which were introduced to indicate that Janice Cohen had become the owner of Melvin Cohen's interest in the stock in NFPS, Inc. were never executed. D–4, 4A.

6.

The purported transfer was not reflected on the books of NFPS, Inc. D–1, T–31.

7.

Despite Cohen's testimony that he had discussed the transfer of ownership with several individuals, including Stan Coburn, Tom Chorey, Craig Wagner, Bill Epstein, and Mark Kaufman, all attorneys at the time with the firm of Troutman, Sanders, Lockerman & Ashmore, T–32, 33, as early as 1976, only two of these attorneys were produced as witnesses at trial and neither of them could recall having knowledge of the alleged transfer prior to March or April of 1979. T–204, 209, 212, 254, 260.

8.

Ten percent of the outstanding shares of NFPS, Inc. was transferred to Ruth Van Hoesen, the administrator of NFPS, Inc., in February 1977. T–280.

9.

Ms. Van Hoesen signed an investment letter dated February 23, 1977, indicating that one–half of the stock was being transferred from the holdings of Dr. Lawrence Baker and one–half from the holdings of Melvin Cohen. T–280(d), D–1.

10.

On February 23, 1977, new stock certificates were issued by NFPS, Inc. to Dr. Baker and Melvin Cohen reflecting the reduced number of shares that each held after the transfer to Ms. Van Hoesen. D–1, D–5, T–102.

11.

An investment memorandum dated December 15, 1976 and prepared by the law firm of Troutman, Sanders, Lockerman & Ashmore in connection with Ponce de Leon–Juniper Limited, a limited partnership, reflected that four hundred fifty (450) shares of the corporate general partner of that limited partnership, NFPS, Inc. were owned as of that date by Melvin H. Cohen. C–6. The attorney who was responsible for the preparation of this document indicated that the information contained in it was based upon information produced by Cohen. T–209.

12.

On February 5, 1979, Melvin H. Cohen signed a financial statement showing himself to be the owner of stock in both NFPS, Inc. and Atlanta Hospital for Women, Inc. D–8.

13.

Atlanta Hospital for Women, Inc. (AHW, Inc.) is a Georgia corporation formed to be and act as the corporate general partner in Atlanta Hospital for Women, Ltd., a Georgia limited partnership which leases and operates the Midtown Hospital facility. T–40.

14.

AHW, Inc. was incorporated in early 1977 with an initial capitalization of $100. T–41. Cohen received 450 of the shares initially issued by AHW, Inc. T–43.

15.

On March 21, 1977, 788 shares of AHW, Inc. were sold to a group of investors, hereinafter the Wiskind–Singer group, for Seventy–five Thousand ($75,000) Dollars or approximately Ninety–five and 18/100 ($95.18) Dollars per share. T–87.

16.

On July 12, 1977, the attorneys for Coleman took the deposition of Melvin H. Cohen in an attempt to locate assets to satisfy a judgment against Cohen. Deposition July 12, 1977. At that deposition, Cohen indicated by his testimony that he owned no stock in either NFPS, Inc. or AHW, Inc. See Deposition, T–87, 88.

17.

Coleman relied upon the statements made in this deposition in entering the settlement agreement, the legality of the rescission of which is the subject of this proceeding. T–220, 269, 270.

## CONCLUSIONS OF LAW

The parties here contest the legality of a purported rescission of a settlement agreement and the subsequent levy by the Sheriff. The parties do not dispute that Cohen was not in default at the time of the rescission. But Coleman contends that he had the right to rescind the settlement agreement because the agreement was procured by Cohen's fraud.

■ Georgia law favors settlements and cessation of litigation. Ga.Code § 20–1205, *Dickerson v. Dickerson*, 19 Ga.App. 269, 91 S.E. 346 (1916), *David v. Atlantic Co.*, 69 Ga.App. 643, 26 S.E.2d 650 (1943). In order to unilaterally rescind, ex parte, such a settlement on grounds of fraud, there must be actual as opposed to constructive fraud. *Barnett v. Speir*, 93 Ga. 762, 21 S.E. 168 (1893), *Puckett v. Reese*, 203 Ga. 716, 48 S.E.2d 297 (1948). In this case the purported rescission was attempted ex parte rather than by resort to the equity power of the courts. Therefore, the rescission was lawful only if the settlement agreement was induced by actual fraud. The Georgia Code defines actual fraud as:

"Wilful misrepresentation of a material fact, made to induce another to act, and upon which he does act to his injury.... Mere concealment of such a fact, unless done in such a manner as to deceive and mislead, will not support an action." Ga. Code § 105–302.

■ The first issue which arises is whether or not misrepresentations were made by Cohen at the July 12, 1977 deposition. Cohen contends that at that time his wife owned the stock in NFPS, Inc. because of an unrecorded transfer of his interest made in June 1974. He admits that there was a misrepresentation by omission concerning his stock in AHW, Inc. T–85.

In determining whether Cohen owned the stock in NFPS, Inc. in July 1977, it must be noted that Cohen could have transferred his equitable interest in this stock to Janice Cohen even without recording the transfer on the books of the corporation. *Piedmont Savings v. Chapman*, 42 Ga.App. 555, 156 S.E. 638 (1930). Two witnesses, Cohen and Janice Cohen, testified that such a transfer had taken place. Dr. Baker testified that the transfer had been discussed, T–138, and had probably taken place. T–144, 145. All three of these witnesses have a stake in the outcome of this litigation. The interest of Cohen and his wife in the outcome of this case is obvious. The interest of Dr. Baker is also apparent. Mrs. Cohen owes him "about a hundred thousand dollars." T–149. It is clearly in his interest that the Court find Janice Cohen to be the equitable owner of this stock. The Court must consider these interests in weighing the testimonial evidence in this case.

Cohen also contends that his attorneys knew of the alleged equitable interest of Janice Cohen. However, the two attorneys who were produced at trial denied having such knowledge prior to 1979. T–204, 209, 212, 254, 260. The other witness who should have had knowledge of any equitable interest in the NFPS, Inc. stock in Cohen's name was Ruth Van Hoesen. She flatly denied any knowledge of any interest held by Janice Cohen. T–279, 280. Her testimony was supported by an investment letter

dated February 23, 1977 indicating that she purchased her shares from Dr. Baker and Cohen, not from Janice Cohen. D–1, T–280.

Therefore, the Court finds that the testimonial evidence on the issue was inconsistent and inconclusive, although it tended to prove the plaintiff's case. This is not the situation with the physical evidence. The physical evidence introduced by Cohen had little, if any, probative value. A check introduced as evidence of the sale transaction bore no indication that it had any relationship to an alleged transfer of stock. D–12. The two unexecuted buy–sell agreements, D–4, 4A, are as probative of the nonexistence as they are of the existence of a transfer.

On the other hand, the evidence introduced by the plaintiff indicates that as recently as February 5, 1979, Cohen knew himself to be the owner of the stock. D–8. The plaintiff's evidence further shows that Cohen represented himself as the owner of this stock, without acknowledgment of any agency or trustee status, frequently and consistently over the entire period in question . D–1, 5, C–6, T–31, 209. The Court finds that Cohen did own the stock in NFPS, Inc. at the time of the post–judgment deposition in July 1977. The statements to the contrary made at the deposition by Cohen were misrepresentations. The great weight of the evidence indicating Cohen's knowledge also leads the Court to the conclusion that the misrepresentations were willful.

The materiality of these misrepresentations cannot be doubted. The purpose of the deposition, which could not have been misunderstood by Cohen, was to discover assets for the purpose of satisfying a judgment against him. The evidence shows an approximate value of ninety–five and 18/100 ($95.18) Dollars per share for his four hundred fifty (450) shares of AHW, Inc. T–87. This indicates a concealed asset of over Forty–two Thousand Seven Hundred Fifty ($42,750) Dollars at the time of the deposition. The value of NFPS, Inc. stock was at all times greater than the value of the AHW, Inc. stock. T–164. The Court finds that the misrepresentation concerning existence of assets in the possession of Mr. Cohen with a value of over eighty thousand dollars was material.

The final element of actual fraud is satisfied by the unrebutted testimony of Mr. Coleman indicating that if he had had knowledge of the existence of these assets in the hands of Mr. Cohen that he would not have entered into the settlement agreement in question. T–220, 269, 270. Therefore, the preponderance of the evidence indicates that the settlement agreement in question was entered into under the inducement of actual fraud on the part of Mr. Cohen. Under Georgia law, this gives rise to a right of ex parte rescission, see Ga. Code § 20–906, on the part of Mr. Coleman, which he exercised.

■ The only remaining issue is whether the offer of Coleman to return funds received pursuant to the settlement agreement was an adequate tender under Georgia law. The governing Code provision states:

> "A contract may be rescinded at the instance of the party defrauded; but in order to rescind he must promptly, upon discovery of the fraud, restore or offer to restore to the other whatever he has received by virtue of the contract, if it be of any value." Ga.Code § 20–906.

The case law indicates that a rescission at law is effected by either "restoring, or making a bona fide offer to restore, to the defendant the fruits of the contract." *Brown v. Techdata Corp.*, 238 Ga. 622, 626, 234 S.E.2d 787 (1977). The evidence indicates that the offer to restore the funds received under the settlement agreement was made in good faith. The Court therefore finds that the rescission effected by Coleman was valid under the laws of Georgia.

■ Having found for the plaintiff, the duty remains to fashion a remedy. The plaintiff has requested that NFPS, Inc. be ordered to issue a new stock certificate representing 450 shares of NFPS, Inc. in

the name of Melvin H. Cohen and deliver the same to the Sheriff of Fulton County for sale at the earliest date allowed by law. The Court finds that it has jurisdiction to do so and that to require NFPS, Inc. to issue a new stock certificate would aid the Sheriff in obtaining the reasonable market value for such shares.

Therefore, it is hereby ORDERED and ADJUDGED that defendants NFPS, Inc. shall issue a new stock certificate representing 450 shares of NFPS, Inc. in the name of Melvin H. Cohen and deliver the same to the Sheriff of Fulton County, Georgia, for sale at the earliest date allowed by law.