KAPILOFF *v.* ASKIN STORES INC.; *et vice versa.*

Nos. 15820, 15848. MAY 16, 1947.

*Noah J. Stone,* for plaintiff in error.　*Shelton & Pharr,* contra:

WYATT, Justice.　We deal first with the cross-bill of exceptions: The record discloses that Ralph H. Pharr appeared as attorney of record for Askin Stores Inc., and Noah J. Stone appeared as attorney of record for Harry Kapiloff.　Mr. Pharr, on the motion to make the settlement agreement the judgment of the court, testified in substance as follows: "Shortly previous to Monday, No-

vember 25, 1946, the defendant's attorney, Mr. Noah J. Stone, discussed with me a proposition of settlement of the pending case upon the basis of an injunction against the defendant, restraining him from doing any business of the kinds referred to in the case, except upon a cash basis. I told Mr. Stone and the defendant that I would discuss the matter with my client and let him know Monday, November 25, 1946. On that date I discussed the proposition I have just stated with Mr. Marks and Mr. Borchard of the plaintiff's company, and they declined to accept that proposal. They authorized me to make the proposal of settling the case upon the basis of an injunction from this court restraining the defendant from engaging in the retail business of men's and women's clothing in Atlanta. The injunction should expire January 1, 1948, instead of the full two years provided in the contract. Mr. Stone, came to my office on Monday, November 25, 1946, and I made him the proposal I have just outlined. He stated that he would discuss the matter with Mr. Kapiloff and let me know. That day he telephoned me and said that the proposition was accepted. . . The first proposition Mr. Stone discussed with me was that I was to allow Mr. Kapiloff to remain in business selling on a cash basis, and my company did not accept that. Then I entered a proposition that we would consent to an injunction expiring January 1, 1948, but the defendant was not to do any business in that line and nature anywhere in the City of Atlanta. No letters were passed between us. Mr. Stone was in my office when I made him that proposition, and he told me he would take it up with Mr. Kapiloff. I did not talk to Mr. Kapiloff after that until I took his testimony in my office. After those conversations I prepared an agreement and two orders of the court to carry out the agreement. They were not signed by Mr. Kapiloff; they were signed by me as attorney for my client. No officer of Askin Stores signed them. As to whether or not I at any time knew Mr. Kapiloff had already been released from any proposition that may have been in this contract as of January 1, 1948, I knew he claimed to be released, and I think I obtained that from you or Mr. Kapiloff, I am not certain. As to whether or not it is true that I haven't conceded to give up anything for this restraining order, I think we have conceded and gave up a great deal. As to whether if he was already released January 1, 1948, then we haven't offered

to do anything further than that, I think so, but you are presupposing something. I did not pay him or offer him any money. The settlement of the case was consideration of the agreement. As to whether we were taking judgment or asking to take judgment for everything we had asked in this suit, the answer is no; we asked for an injunction in the suit in accordance with the provisions of the agreement. The provision was a covenant of two years from the date of termination of his employment. As to whether or not we have been misled or hurt, I think so. In the first place, we understood the case was settled. We acted upon that basis. I let Mr. Borchard go back to New York, thinking it was settled. He had incurred expense coming down here to determine if the case was settled. I advised him that it was settled. We had to prepare this case, which is something we would not have done if he had gone through with this settlement agreement. As to whether Mr. Borchard was down here at a meeting of the various managers of the stores, I do not know. He came to my office for the purpose of talking about this case. I don't know anything about the other business. . . Another thing I would like to state is that on Friday after the agreement was made on Monday, Mr. Stone called me and said that his client had backed out and wouldn't go through with the settlement."

Harry Kapiloff, on this motion, testified as follows: "Mr. Noah J. Stone is my lawyer; he represents me in the handling of this case. As to whether or not on Friday, November 22, I had any conversation with you concerning this case, I don't remember the date. As to whether on Monday, November 25, I authorized Mr. Stone to come to see you and discuss this case, I don't remember the date. I authorized Mr. Stone. He told me after his conversation with you that you were agreeable to stopping litigation upon the basis of the injunction against me from entering or operating a retail-clothing business for men and women's apparel in Atlanta until January 1, 1948, and I agreed to that proposition. I authorized him to accept that. . . After I seen the copies Mr. Pharr submitted to your office [referring to Mr. Stone's office] I did not agree to the settlement as presented, and I refused to go through with them. Mr. Pharr did not change them or make any change. I withdrew my offer. I do not remember the date when I first seen them. I believe I was out of town and came

back about a week later that they were drawn up. When I came back I seen the papers and that is when I refused to go through with it. I now refuse to go through with them. When I was talking to Mr. Pharr I told him about this letter dated December 28, 1945, from the Askin Stores. He said he knew something about it. I did not know at the time of this conversation between Mr. Pharr and I that the law had been changed in Georgia as to these contracts, and Mr. Pharr did not make any statement to me as to that connection. I do not want to go through with it now; I want to fight the case. No money has been paid to me or offered to me for anything."

It appears from the above testimony that a definite, certain, and unambiguous settlement agreement was made between the parties. The agreement was not in writing but was oral. "We know of no rule of law which places it in the power of either party to a compromise, to disregard it, if it was full and final between the parties, as to the subject-matter of controversy." *Parker* v. *Riley,* 21 *Ga.* 427, 430. "Where an agreement for the compromise of a pending cause is made by a party and his counsel on the one hand, and by the counsel of the opposite party and ratified by his client, whereby one of the parties is to do certain acts, such agreement upon performance or offer to perform according to its terms within a reasonable time, becomes binding on the parties, and puts an end to the original subject-matter of the controversy. . . . Such an agreement need not be in writing. The rule of court, that no consent between attorneys or parties, if denied, will be enforced if not in writing, has no application to an oral agreement and compromise of a pending suit. The settlement of doubtful issues involved in a pending cause is a sufficient consideration to support an agreement of settlement and compromise." *Boswell* v. *Gillen,* 131 *Ga.* 310 (62 S. E. 187).

In *Stone Mountain Confederate Monumental Assn.* v. *Smith,* 170 *Ga.* 515 (153 S. E. 209), this court held: "The consent and agreement of counsel to dismiss a pending case upon the happening of a certain contingency, where that contingency actually happened, is binding upon his client, though the latter did not know of the consent and agreement, and consequently did not assent thereto. . . Where the consent and agreement referred to was not reduced to writing, but was not denied, it is enforceable; and

especially is this true where it was acted upon by one of the parties."

In the present case, the settlement agreement and compromise, as testified to by Mr. Pharr, was admitted to be true by Harry Kapiloff; and this agreement should have been made the judgment of the court, thereby terminating the litigation. True it is, the temporary restraining order covers the same period of time as does the settlement agreement. However, the plaintiff in the court below was entitled to a final judgment terminating the case, and not a temporary restraining order.

Since the ruling herein made on the cross-bill terminates the case, the questions raised by the main bill of exceptions will not be passed upon.

*Judgment reversed on the cross-bill of exceptions; main bill dismissed. All the Justices concur.*