In the Matter of Thomas E. COTTON, Debtor.

Bankruptcy No. 89–51386.

United States Bankruptcy Court, M.D. Georgia, Macon Division.

May 13, 1991.

Wesley J. Boyer, Arnall, Golden & Gregory, Macon, Ga., for Thomas E. Cotton.

Duncan A. Roush, Theodore Brown, Jr., Kilpatrick & Cody, Atlanta, Ga., for Bank South, N.A.

## MEMORANDUM OPINION

ROBERT F. HERSHNER, Jr., Chief Judge.

Thomas E. Cotton, Debtor, filed a petition under Chapter 12 of the Bankruptcy Code on June 5, 1989. Bank South, N.A., filed an "Objection to Withdrawal of Debtor's Motion for Approval of Compromise and Settlement of Claims Between the Debtor and Bank South, N.A. and Request for Specific Performance of Settlement Agreement" on January 30, 1991. A hearing was held on March 22, 1991. The Court, having considered the evidence presented and the arguments of counsel, now publishes this memorandum opinion.

Debtor was a credit customer of the Athens, Georgia, branch of Bank South. Debtor dealt almost exclusively with Tommy Stephens, vice president of the Athens branch of Bank South. Debtor talked with Mr. Stephens about establishing a line of credit to enable Debtor to purchase certain pressure washers. Debtor signed one or more blank promissory notes and deeds to secure debt in favor of Bank South. Mr. Stephens was to hold these blank documents until Debtor needed the loan. The pressure washers were delivered to Debtor. Debtor asserts that he rejected the pressure washers because they were defective. Debtor asserts that he told Mr. Stephens to pick up the defective pressure washers.

Bank South issued the letter of credit and completed the blank promissory note and security deeds. Debtor asserts that he never authorized Mr. Stephens or Bank South to do this. Debtor refused or was unable to pay this debt. Debtor filed his bankruptcy petition to stay a foreclosure.

Debtor admits that he is indebted to Bank South in some disputed amount. Part, or perhaps all, of the debt is secured by real property owned by Debtor or his

wife. Debtor asserts certain claims against Bank South.

Debtor and Bank South agreed to a settlement. Terms of the settlement were read into the Court's record at a hearing on April 27, 1990. Present at the hearing were representatives of Bank South and Bank South's counsel, Debtor and his counsel, and Debtor's wife and her counsel. Counsel for all parties stated on the record that their clients consented to the settlement terms.

The parties had difficulty implementing the settlement. Counsel for Debtor and Bank South vigorously dispute which party was uncooperative and caused the delay. Finally, Debtor's counsel filed a "Motion for Approval of Compromise and Settlement of Claims Between the Debtor and Bank South, N.A." on December 21, 1990. Before the Court could consider the motion, Debtor filed a "Withdrawal of Motion for Approval and Settlement of Claims Between the Debtor and Bank South, N.A." on January 29, 1991. Bank South objects to the withdrawal, asserting that a binding settlement had been reached.

Mr. Stephens committed certain wrongful acts while employed by Bank South and resigned in June 1989. Some of the wrongful acts related to Debtor's account. Bank South filed a complaint in state court against Mr. Stephens on April 13 or 18, 1990. Bank South received a judgment for $187,906.72 on May 11, 1990.

Debtor asserts that he would not have agreed to the settlement if he had known that Bank South had filed a complaint against Mr. Stephens. Debtor apparently contends that Mr. Stephens now is judgment proof.

The first question before the Court is whether Debtor can unilaterally rescind the settlement agreement. In *Ford v. Citizens and Southern National Bank, Cartersville*,[1] the Eleventh Circuit Court of Appeals stated:

Georgia law governs both the construction of the settlement agreement and the attorney's authority to enter into that agreement on behalf of his client. *Blum v. Morgan Guar. Trust Co.,* 709 F.2d 1463, 1467 (11th Cir.1983) (construction of agreement); *Glazer v. J.C. Bradford & Co.,* 616 F.2d 167, 168 (5th Cir. 1980) (attorney's authority).

Under Georgia law, "an attorney is cloaked with apparent authority to enter into a binding agreement on behalf of a client." *Glazer,* 616 F.2d at 168. The client is therefore "bound by his attorney's agreement to settle a lawsuit, even though the attorney may not have had express authority to settle, if the opposing party was unaware of any limitation on the attorney's apparent authority." *Id.* . . .

A meeting of the minds is a prerequisite to the formation of settlement agreements under Georgia law. *See Blum,* 709 F.2d at 1467.

928 F.2d at 1120.

■ Thus, Georgia law is controlling on this question. In *Cross v. Cook*,[2] the Georgia Court of Appeals stated:

1. "The parties to a pending law suit may by oral agreement compromise and settle the same, which will bind them although not reduced to writing. *Boswell v. Gillen,* 131 Ga. 310, 62 S.E. 187." *Herndon v. Herndon,* 227 Ga. 781, 783, 183 S.E.2d 386, 388 (1971). For such an agreement to be binding on the parties it should be clear that it is full and complete, covers all issues, and is understood by all litigants concerned. "A compromise, when made full and complete, puts an end to the subject matter of controversy." *Parker v. Riley,* 21 Ga. 427 (1857), and *see Kapiloff v. Askin Stores, Inc.,* 202 Ga. 292, 42 S.E.2d 724 (1947).

2. An oral compromise, where denied by one of the parties, creates an issue of fact, and it will not be adopted by the court unless it appears that the terms were understood and agreed to by those concerned.

250 S.E.2d at 28–29.

---

**1.** 928 F.2d 1118 (11th Cir.1991).

**2.** 147 Ga.App. 695, 250 S.E.2d 28 (1978).

In *Glazer v. J.C. Bradford and Co.*,[3] the former Fifth Circuit Court of Appeals stated:

> Under Georgia law, an attorney is cloaked with apparent authority to enter into a binding agreement on behalf of a client. Such a settlement agreement may be enforced against the client by the other settling parties. *Stone Mountain Confederate Monumental Association v. Smith*, 170 Ga. 515, 153 S.E. 209 (1930); *see McDonald v. Pearre Brothers & Co.*, 5 Ga.App. 130, 62 S.E. 830 (1908); Restatement (Second) of Agency § 140(b) (1957)....
>
> It is undisputed here that the attorneys for both plaintiff and defendants effected a settlement agreement. The settlement agreement, even though not in writing, may be enforced, because plaintiff has denied only his attorney's authority to settle, not the existence of the settlement itself. *Stone Mountain Confederate Monumental Association v. Smith*, 170 Ga. 515, 153 S.E. 209, 212; *Parkerson v. Indies Co.*, 148 Ga.App. 106, 251 S.E.2d 98, 99 (1978); *Oliver v. Godley*, 38 Ga.App. 66, 142 S.E. 566 (1928); Ga.Code Ann. §§ 9–605, 24–3339.
>
> Only if the client had specifically limited his attorney's authority to settle and the opposing attorneys were aware of this limitation would the settlement agreement have been unenforceable. *Reece v. McCormack*, 188 Ga. 665, 4 S.E.2d 575, 576–77 (1939); *Elliott v. Elliott*, 184 Ga. 417, 191 S.E. 465, 466–67.

616 F.2d at 168–69.

■ An agreement by a debtor in possession to compromise litigation is binding upon all parties to the agreement, pending a court determination about whether or not to approve the agreement. *Providers Benefit Life Insurance Co. v. Tidewater Group, Inc. (In re Tidewater Group, Inc.)*, 8 B.R. 930, 933 (Bankr.N.D.Ga.1981).

Bank South asserts that Debtor cannot unilaterally rescind the agreement unless Bank South committed actual fraud as opposed to constructive fraud. Bank South relies upon *Coleman v. Ellenberg (In re Cohen)*,[4] in which the court stated:

> Georgia law favors settlements and cessation of litigation. Ga.Code § 20–1205, *Dickerson v. Dickerson*, 19 Ga.App. 269, 91 S.E. 346 (1916), *David v. Atlantic Co.*, 69 Ga.App. 643, 26 S.E.2d 650 (1943). In order to unilaterally rescind, ex parte, such a settlement on grounds of fraud, there must be actual as opposed to constructive fraud. *Barnett v. Speir*, 93 Ga. 762, 21 S.E. 168 (1893), *Puckett v. Reese*, 203 Ga. 716, 48 S.E.2d 297 (1948). In this case the purported rescission was attempted ex parte rather than by resort to the equity power of the courts. Therefore, the rescission was lawful only if the settlement agreement was induced by actual fraud. The Georgia Code defines actual fraud as:
>
> > "Wilful misrepresentation of a material fact, made to induce another to act, and upon which he does act to his injury.... Mere concealment of such a fact, unless done in such a manner as to deceive and mislead, will not support an action." Ga.Code § 105–302.

6 B.R. at 711.

Bank South's reliance upon *In re Cohen* is partly misplaced. In *In re Cohen*, the bankruptcy court cited *Puckett v. Reese*,[5] in which the Georgia Supreme Court stated:

> While only actual fraud will authorize an ex parte rescission of a sale of personalty so as to enable the aggrieved party to sue at law, as in trover, for property that he may have delivered to the other under the contract, a sale either of realty or of personalty may be rescinded by a court of equity for mere constructive fraud, where the other essentials of the case are established.

48 S.E.2d at 304.

In *Jordan v. Belvin*,[6] the Georgia Court of Appeals stated:

---

**3.** 616 F.2d 167 (5th Cir.1980).

**4.** 6 B.R. 708 (Bankr.N.D.Ga.1980).

**5.** 203 Ga. 716, 48 S.E.2d 297 (1948).

**6.** 57 Ga.App. 719, 196 S.E. 132 (1938).

Fraud is either actual or constructive, and either constitutes legal fraud. *Penn Mutual Life Ins. Co. v. Taggart*, 38 Ga. App. 509, 511 (144 S.E. 400).... [A]n action for damages for a tort ... must be grounded on actual fraud involving conscious moral guilt.... [I]t is clear ... that actual fraud is not essential to support an action in equity to rescind a contract for fraud, or a plea of fraud to a suit on a contract; innocently made material misrepresentations which the opposite party has a right to act on, and does act on to his injury, and which amount only to constructive fraud, being sufficient in these last two instances. By a parity of reasoning, actual fraud is not essential to the setting aside of an accord and satisfaction in a case like the one at bar.

57 Ga.App. at 723–24, 196 S.E. 132.

In *Allen v. Sanders*,[7] the Georgia Court of Appeals stated:

" 'One cannot claim to be defrauded about a matter equally open to the observation of all parties where no special relation of trust or confidence exists. [Cits.] Further, in the absence of special circumstances one must exercise ordinary diligence in making an independent verification of contractual terms and representations.... [Cits.]' [Cit.]"

337 S.E.2d at 430.

In *Ford*, the Eleventh Circuit Court of Appeals stated:

Even though the "substantive dimension" of a claim brought in federal court may be governed by state law, "the right to a jury trial in federal courts is to be determined as a matter of federal law." *Simler v. Conner*, 372 U.S. 221, 222, 83 S.Ct. 609, 610, 9 L.Ed.2d 691 (1963) (per curiam); *see also Owens v. International Paper Co.*, 528 F.2d 606, 611 (5th Cir.1976) (rejecting "attempts to apply state procedural rules to the judge-jury relationship")....

Under federal law, a district court has "inherent power to summarily enforce settlement agreements entered into by parties litigant in a pending case." *Cia*

*Anon Venezolana de Navegacion v. Harris*, 374 F.2d 33, 36 (5th Cir.1967). To that end, it is clear that the district court may hold an evidentiary hearing and make factual determinations. *Id.* "[T]he right to have a jury determine issues of fact turns essentially on whether the claim to which those issues relate is legal or equitable." *Hensley v. E.R. Carpenter Co., Inc.*, 633 F.2d 1106, 1110 n. 5 (5th Cir. Unit A 1980). "The motion to enforce the settlement agreement essentially is an action to specifically enforce a contract." *Adams v. Johns–Manville Corp.*, 876 F.2d 702, 709 (9th Cir.1989); *see also Blum*, 709 F.2d at 1467 (referring to an order enforcing a settlement agreement as "the remedy of specific performance"). A claim for specific performance is an equitable action. *Hensley*, 633 F.2d at 1110 n. 5. "This is so even if the party resisting specific enforcement disputes the formation of the contract." *Adams*, 876 F.2d at 709–10. Purely equitable claims, even those involving factual disputes, are matters to be resolved by the court rather than a jury. *Hensley*, 633 F.2d at 1110 n. 5.

928 F.2d at 1121–22.

■ Debtor asserts that he would not have agreed to the settlement if he had known that Bank South had filed a complaint against Mr. Stephens. Debtor and Bank South were adverse parties. Debtor was represented by counsel. Bank South's complaint against Mr. Stephens was filed several days before the settlement was read into the Court's record. Thus, the complaint was a matter of public record. Debtor does not contend that he asked Bank South if it had filed a complaint against Mr. Stephens. Debtor has not shown that Bank South had a duty to disclose this information.

The Court is persuaded that Debtor has not shown actual fraud or constructive fraud by Bank South. The Court is persuaded that Debtor cannot rescind the settlement agreement.

---

7. 176 Ga.App. 647, 337 S.E.2d 428 (1985).

The Court now turns to the question of whether it should approve the settlement agreement. In *TMT Trailer Ferry, Inc. v. Anderson*,[8] the Supreme Court stated:

> Compromises are "a normal part of the process of reorganization." In administering reorganization proceedings in an economical and practical manner it will often be wise to arrange the settlement of claims as to which there are substantial and reasonable doubts. At the same time, however, it is essential that every important determination in reorganization proceedings receive the "informed, independent judgment" of the bankruptcy court. The requirements of §§ 174 and 221(2) of Chapter X, 52 Stat 891, 897, 11 USC §§ 574, 621(2), that plans of reorganization be both "fair and equitable," apply to compromises just as to other aspects of reorganizations. The fact that courts do not ordinarily scrutinize the merits of compromises involved in suits between individual litigants cannot affect the duty of a bankruptcy court to determine that a proposed compromise forming part of a reorganization plan is fair and equitable. There can be no informed and independent judgment as to whether a proposed compromise is fair and equitable until the bankruptcy judge has apprised himself of all facts necessary for an intelligent and objective opinion of the probabilities of ultimate success should the claim be litigated. Further, the judge should form an educated estimate of the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise. Basic to this process in every instance, of course, is the need to compare the terms of the compromise with the likely rewards of litigation.

390 U.S. at 424–25, 88 S.Ct. at 1163–64 (citations omitted).

The Supreme Court continued, stating:

> Litigation and delay are always the alternative to settlement, and whether that alternative is worth pursuing necessarily depends upon a reasoned judgment as to the probable outcome of litigation. . . .
>
> The argument that the compromises were properly approved because no creditors objected to them seems doubly dubious. When a bankruptcy court either fails adequately to investigate potential legal claims held by the debtor, or refuses to provide an adequate explanation of the basis for approving compromises, it is scarcely surprising that creditors fail to come forward with objections to the compromises.

390 U.S. at 434–35, 88 S.Ct. at 1168–69.

Finally, the Supreme Court stated: "To make an informed and independent judgment, however, the court needs facts, not allegations." 390 U.S. at 437, 88 S.Ct. at 1170.

In *Wallis v. Justice Oaks II, Ltd. (In re Justice Oaks II, Ltd.)*,[9] the Eleventh Circuit Court of Appeals stated:

> When a bankruptcy court decides whether to approve or disapprove a proposed settlement, it must consider:
>
> (a) The probability of success in the litigation; (b) the difficulties, if any, to be encountered in the matter of collection; (c) the complexity of the litigation involved, and the expense, inconvenience and delay necessarily attending it; (d) the paramount interest of the creditors and a proper deference to their reasonable views in the premises.

898 F.2d at 1549.

Scott McLarty, attorney at law, testified on behalf of Debtor. Mr. McLarty has agreed to represent Debtor, on a contingent fee basis, in a civil action against Bank South. The cause of action includes RICO, theft by deception, and damages to Debtor's reputation. Mr. McLarty testified that he has interviewed a number of potential witnesses. He testified that he has deposed the president of Bank South's Ath-

---

**8.** 390 U.S. 414, 88 S.Ct. 1157, 20 L.Ed.2d 1 (1968).

**9.** 898 F.2d 1544 (11th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 387, 112 L.Ed.2d 398 (1990).

ens branch and a Bank South vice president in Atlanta.

Mr. McLarty's view is that Debtor has a very real chance of a substantial recovery against Bank South. It is uncontested that any future litigation between Debtor and Bank South would be very complex and very lengthy.

In deciding whether to approve the settlement, the Court has reviewed Debtor's bankruptcy case in its entirety. The case was filed by Debtor pro se on June 5, 1989, to stay a foreclosure. On July 26, 1989, the Court approved Debtor's application to appoint the law firm of Arnall, Golden & Gregory to represent him.

There has been considerable litigation in this bankruptcy case. Debtor's primary dispute is with Bank South. It was only after the expenditure of considerable time and expense by Debtor and Bank South and their respective counsel that the settlement in question was announced on the Court's record. Debtor, through the settlement, now has the opportunity to resolve his dispute with Bank South.

Debtor's bankruptcy case has been pending for almost two years. During this time, he has made no payments to his creditors. By settling his dispute with Bank South, Debtor will have the opportunity to immediately begin dealing with his other creditors.

If the settlement is not approved, Debtor will embark upon complex, lengthy, and expensive litigation. The Court has carefully compared the terms of the settlement with the probability of success and likely rewards of litigation. In the Court's view, it is in Debtor's best interest to resolve the dispute with Bank South. The Court also is persuaded that this is in the best interest of Debtor's other creditors. Therefore, the Court is persuaded that it should approve the settlement reached between Debtor and Bank South.

 Debtor filed a motion for voluntary dismissal of his bankruptcy case on January 30, 1991. A number of hearings on the motion and related motions have been held. The Court is persuaded that it should stay any action on Debtor's motion to dismiss. *See* 11 U.S.C.A. § 105(a) (West Supp.1991) (court may issue any order necessary or appropriate to carry out provisions of the Bankruptcy Code). After Debtor and Bank South certify to the Court that the settlement agreement has been implemented, the Court will consider and grant Debtor's motion to dismiss.

An order in accordance with this memorandum opinion will be entered this date.