A93A0760. THOMPSON et al. v. PULTE HOME CORPORATION.
(434 SE2d 89)

BEASLEY, Presiding Judge.

Pulte Home Corporation sued Richard Thompson and Marguerita Thompson, alleging the Thompsons damaged Pulte's business reputation, interfered with its contractual relations and violated restrictive covenants by posting defamatory yard signs and making false statements about Pulte's business practices and products. The Thompsons counterclaimed, alleging that Pulte duped them into purchasing a substandard house.

On October 2, 1991, the Thompsons went with their attorney (Eaton) to the law office of Pulte's attorney (LaChance) to discuss settlement. During negotiations, the Thompsons agreed to sell their house in exchange for Pulte's promise to make repairs and pay for any loss resulting from the subsequent sale, based on the Thompsons' initial capital expenditure. The negotiations also included the Thompsons' promise to stay away from the house during renovation, estimated at 21 days; Pulte's promise to pay for the Thompsons' food and lodging expenses during renovation; and mutual agreements to dismiss the case after sale of the house.

The next day, Pulte's motions for contempt, interlocutory injunction, realignment of parties and expenses of litigation plus attorney fees came on for hearing. The parties' attorneys announced that set-

tlement had been reached and it would be reduced to writing and filed with the court. In exchange for the Thompsons' consent, by attorney Eaton, to an order granting Pulte's motions for interlocutory injunction and to realign parties, Pulte withdrew the motions for contempt and expenses of litigation.

On October 11, LaChance forwarded a draft settlement agreement to Eaton. It evidenced all but one issue resolved by the parties during settlement negotiations, i.e., the Thompsons' daily allowance for living expenses during renovation. Eaton responded via telefax the same day: "I have reviewed the proposed settlement agreement and find it agreeable except Item (D) which allows for $75.00 per day for food, lodging etc. During our discussions we spoke of the Ramada Rennisance (sic) and Airport Marriot (sic). I inquired at both of these and the Ramada is the least at $90.00 per night. In additional (sic) there needs to be an allowance for Food for (2) persons. Give me your thoughts on this."

Sometime after October 16, LaChance sent Eaton a revised version of the unexecuted settlement agreement, providing the Thompsons with a $100 per day allowance for expenses during renovation. The Thompsons refused to execute the revised settlement contract and, in a letter dated December 16, Eaton informed LaChance that he would be withdrawing as counsel and that the Thompsons had "instructed [him] to reject any further effort with regards to settling this case."

Pulte moved to enforce the settlement agreement with the $100 per day expense allowance. The Thompsons responded, alleging that they did not enter into a definite, certain, and unambiguous settlement agreement with Pulte and that Eaton had no authority to settle the case without their consent. The court granted Pulte's motion and ordered the Thompsons to pay $500 in attorney fees for bringing a frivolous action.

1. The undisputed evidence shows the existence of a binding agreement. This case turns on basic principles of contract formation and enforcement. The Thompsons actively participated in the negotiations which culminated in a compromise and settlement agreement as to all issues in the pending litigation. This is confirmed by their own attorney's deposition testimony. The discussion and understanding with respect to the per diem allowance was that it would be adequate to cover lodging and food. A specific amount was not stated. The terms of the settlement were acceptable to the Thompsons; a handshake cemented their understanding. Each party assented to the terms. OCGA § 13-3-2. All that remained was the formality of reducing those terms to written form. The court was apprised on the following day by counsel for both parties that the matter had been settled.

Pulte's attorney drafted the written document memorializing the understanding of the parties. All material terms were accepted by the Thompsons' attorney except for the dollar amount of the per diem reimbursement, which Pulte agreed to increase to an amount reasonably adequate to cover the expenses agreed upon.

Both *Brumbelow v. Northern Propane Gas Co.*, 251 Ga. 674 (308 SE2d 544) (1983) and *LeCroy v. Massey*, 185 Ga. App. 828, 829 (366 SE2d 215) (1988), relied upon by appellants, concern settlement agreements *between counsel* for the parties in which the existence of an agreement was contested. Here the parties negotiated their own settlement. Likewise, OCGA § 15-19-5 is inapplicable. It requires agreements *between counsel* to be in writing in order to bind their clients. USCR 4.12 provides that "[a]n attorney of record has apparent authority to enter into agreements on behalf of his client(s) in civil actions. Oral agreements, if established, are enforceable." *Kapiloff v. Askin Stores*, 202 Ga. 292 (42 SE2d 724) (1947), affirmed that oral settlement agreements are enforceable. Such "contract exists [when] all essential terms have been agreed to. OCGA § 13-3-2." *Bridges v. Bridges*, 256 Ga. 348, 349-350 (1) (349 SE2d 172) (1986).

The oral agreement at issue here was reduced to writing, submitted to the Thompsons, and accepted by their attorney. The trial court was correct in concluding as a matter of law that the Thompsons were bound by a definite, enforceable agreement which they may not now arbitrarily deny. "Findings of fact by the court will not be set aside by an appellate court unless 'clearly erroneous.' [Cits.]" *Greene v. Colonial Stores*, 144 Ga. App. 645, 647 (2) (242 SE2d 489) (1978). As in *Greene*, "[t]he oral agreement was legally enforceable." Id. at 647.

2. The record supports the trial court's sua sponte award of $500 under OCGA § 9-15-14 (b) for a frivolous action. The court did not abuse its discretion. *Haggard v. Bd. of Regents*, 257 Ga. 524 (360 SE2d 566) (1987).

*Judgment affirmed. Pope, C. J., Birdsong, P. J., Cooper, Andrews, Johnson, Blackburn and Smith, JJ., concur. McMurray, P. J., dissents.*

McMURRAY, Presiding Judge, dissenting.

I respectfully dissent as my examination of the record reveals evidence giving rise to genuine issues of material fact regarding the existence of a settlement contract. In fact, my examination of the record reveals proof that the parties never resolved a material issue of dispute and thereby failed to reach a binding settlement agreement.

Apparently accepting only the testimony of Pulte's attorney (LaChance), the majority holds that the parties entered into a binding settlement agreement at the October 2, 1991, settlement conference. This view ignores attorney Eaton's testimony that any settle-

ment agreement (oral or written) "was dependant upon the written agreement being suitable to all of the parties. . . ." The majority view also ignores the affidavit of Ben F. Marsh, an eyewitness to the October 2, 1991, settlement conference who deposed that the parties agreed during negotiations that settlement would not be final until execution of a written agreement. Specifically, as quoted from his affidavit, Ben F. Marsh deposed that he attended the October 2, 1991, settlement conference; that he "overheard the participants discuss the fact that no final conclusions would be reached at the meeting [and that it] was discussed that any decisions which were reached at the meeting would be put in writing, submitted by the attorneys to the parties for their review and would be signed by the parties before they would become binding." It is my view, that the above evidence gives rise to genuine issues of material fact regarding the very existence of a settlement agreement between the parties. See *Devereaux v. C & S Nat. Bank*, 172 Ga. App. 53 (322 SE2d 310). However, assuming the contrary, it is my view that the unresolved issue of the Thompsons' per diem expense allowance during renovation is proof that the parties never entered into a binding settlement agreement.

In *Bridges v. Bridges*, 256 Ga. 348 (349 SE2d 172), the Georgia Supreme Court held that no settlement "contract exists until all essential terms have been agreed to. OCGA § 13-3-2." Id. at 349 (1). The Supreme Court found in *Bridges* that the parties' failure to resolve a dispute over a "VCR" was material to settlement and held that the trial court erred in enforcing an intricate settlement agreement which had otherwise been approved by the opposing parties. *Bridges v. Bridges*, 256 Ga. App. 348, 349 (1), supra. In view of this holding, I cannot say that the Thompsons' per diem expense allowance during the estimated 21-day renovation period was immaterial to settlement and I do not agree that Pulte's $100 per day settlement offer (contained in the settlement contract Pulte now seeks to enforce) fills this gap.

Neither this court nor the trial court has authority to enforce a term of settlement that was never resolved by the parties. However, this is the impact of the majority holding as this court is affirming enforcement of a provision of a settlement contract (unilaterally prepared by Pulte) that was never resolved by the parties, i.e., the amount of the Thompsons' per diem expense allowance during the estimated 21-day renovation period. Under these circumstances, I would reverse the trial court's order enforcing settlement and awarding Pulte $500 in attorney fees pursuant to OCGA § 9-15-14.

Decided July 1, 1993 —
Reconsideration denied July 16, 1993 —

Robert M. Goldberg, for appellants.
Peterson, Dillard, Young, Self & Asselin, Richard W. Wilson, Jr., James M. Lachance, Mayer & Beal, Andrew M. Beal, for appellee.