A98A1694, A98A1695. FULTON COUNTY TAX COMMISSIONER v. GENERAL MOTORS CORPORATION; and vice versa.

(507 SE2d 772)

ELDRIDGE, Judge.

General Motors Corporation, plaintiff ("GM") leased motor vehicles manufactured by it which were subsequently reacquired by GM and held such vehicles at the Atlanta Auto Auction in Fulton County in tax years 1993 and 1994, pending sale and shipment out-of-state. GM contended that it was entitled to freeport exemption as to such property from ad valorem taxation. However, the Fulton County Tax Commissioner ("Tax Commissioner") demanded that GM pay $510,379.99 in 1993 ad valorem tax on such returned property. GM paid the ad valorem taxes on such property. Subsequently, GM sought a refund for 1993 and 1994 and sued the Tax Commissioner under OCGA § 48-5-450. In the suit, GM also sought a declaratory judgment that it was entitled to freeport exemption in the future for such personal property.

The Tax Commissioner answered, but did not raise an OCGA § 9-11-19 defense of indispensable parties or the wrong defendant, in the Fulton County Board of Tax Assessors, either in the answer or in an OCGA § 9-11-12 (b) (6) or (7) motion.

GM moved for partial summary judgment with supporting affidavits that the Tax Commissioner wrongfully denied GM freeport exemption from ad valorem taxes on the motor vehicles held at Atlanta Auto Auction for sale out-of-state. The Tax Commissioner presented no evidence in opposition and consented to the entry of partial summary judgment determining that GM was entitled to such freeport exemption.

The case came on for trial on the issue of a refund for 1993 and 1994, and the parties announced in open court on February 7, 1995, that the case was settled. By trial court order, the case was removed from the trial calendar to effect settlement within 30 days. On March 23, 1995, the trial court entered a consent judgment refunding/granting a credit against future taxes based on certain ad valorem taxes for 1993 and 1994, and the Tax Commissioner was ordered to grant to GM freeport exemption from ad valorem taxation upon proper application for all motor vehicles at the Atlanta Auto Auction sold

out-of-state in the future.

On March 23, 1996, GM filed its freeport exemption application with the Fulton County Board of Tax Assessors pursuant to OCGA § 48-5-48.1 (a). However, on October 29, 1996, the Fulton County Board of Tax Assessors gave notice of an ad valorem tax assessment on such property that GM contended was exempt under the consent judgment. Notwithstanding either the consent summary judgment or the consent judgment, the Tax Commissioner billed the ad valorem taxes upon such property, and GM paid the tax bill under protest.

On April 11, 1997, GM brought an ancillary motion under the original complaint to enforce the consent judgment and for the award of attorney fees, with supporting affidavits. Subsequently, the Tax Commissioner raised by motion to set aside the judgments the issue that Fulton County could not be bound by the settlement, because the attorneys for the Tax Commissioner had no authority to enter into a settlement binding Fulton County. The Tax Commissioner, for the first time, raised the issue that he was the wrong party and that the Fulton County Board of Tax Assessors was the correct party.

On October 13, 1997, the trial court entered an order of enforcement as to the binding effect and enforceability of the consent judgment as to the Tax Commissioner and denied the award of attorney fees to GM.

The Tax Commissioner filed his application for discretionary appeal; the notice of appeal was filed on November 7, 1997, in A98A1694 when leave was granted. On November 12, 1997, GM filed its cross-appeal in Case No. A98A1695.

### Case No. A98A1694

The Tax Commissioner enumerates as error that the trial court granted GM's motion to enforce the consent judgment. We do not agree.

1. After 1992, the Fulton County Board of Tax Assessors were made the officials with whom the application for freeport exemption was required to be filed. See OCGA § 48-5-48.1; Ga. L. 1992, p. 2482, § 1. For purpose of motor vehicles, their role in receiving the application is only ministerial as agents for the Tax Commissioner, who is the only official authorized to collect ad valorem taxes and to determine which property is exempt for the tax digest. See OCGA § 48-5-103 (9); see generally *Levetan v. Lanier Worldwide*, 265 Ga. 323, 324 (1) (454 SE2d 504) (1995).

In Fulton County, the Tax Commissioner has the combined duties of the office of tax receiver, OCGA § 48-5-103, and of tax collector, OCGA § 48-5-127. In pertinent part, the Tax Commissioner has the ultimate discretion and authority to determine what property

goes on the tax digest that he must prepare and submit to the State Revenue Commissioner for approval, and in doing so, he must ultimately decide what property shall receive ad valorem tax exemption on the tax digests. See OCGA § 48-5-103 (9). The Fulton County Board of Tax Assessors acts as the agents for the Tax Commissioner in processing the freeport exemption.

In appealing the wrongful assessment of motor vehicles, GM used the proper procedure against the Tax Commissioner to contest the assessment. See *East West Express v. Collins*, 264 Ga. 774, 775 (449 SE2d 599) (1994); *Blackmon v. Scoven*, 231 Ga. 307, 309-310 (2) (201 SE2d 474) (1973). The Tax Commissioner stands in the shoes of the State Revenue Commissioner regarding assessment and valuation of motor vehicles. See Ga. L. 1967, pp. 91, 94, § 2A; Ga. L. 1978, pp. 309, 491-492, § 2; OCGA §§ 48-5-450; 48-5-475.

Fulton County Board of Tax Assessors' ministerial duties in processing the freeport application as to motor vehicles are: (1) to determine if the application for freeport exemption was timely filed; and (2) to determine if the applicant falls into one or more categories for exemption. See Ga. Const. of 1983, Art. VII, Sec. II, Par. III (a); OCGA §§ 48-5-48.1; 48-5-48.2; *Apollo Travel Svcs. v. Gwinnett County Bd. of Tax Assessors*, 230 Ga. App. 790, 792 (4) (498 SE2d 297) (1998); *Committee for Better Govt. v. Black*, 216 Ga. App. 173, 174-176 (2) (453 SE2d 772) (1995). OCGA § 48-5-450 provides that appeals from assessments as to motor vehicles are from the Tax Commissioner. See *Apollo Travel Svcs. v. Gwinnett County Bd. of Tax Assessors*, supra. Further, where the Fulton County Board of Tax Assessors denied freeport exemption as to motor vehicles held for shipment out-of-state, this resulted in an assessment, and GM had the right of appeal directly to the superior court under OCGA § 48-5-450, which it did in the form of a motion to enforce the consent judgment. " 'Any owner who contests the value assessment of a motor vehicle . . . may appeal such assessed value as provided for in Code Section 48-5-311. . . .' OCGA § 48-5-450. In subsection (e) of § 48-5-311, provision is made for the county board of tax assessors to review the valuation of personal property and, in the event the challenge to the valuation is rejected, . . . [s]ubsection (f) of that section provides for an appeal to the superior court by the taxpayer[.] . . . Once that showing [of freeport exemption] is made, the taxing authority must make an appropriate [grant of exemption if the conditions of timeliness of the application and eligibility exist]. . . . [I]t is initially the county board of tax assessors and, in the event of continued disagreement, the [superior court] who must consider the taxpayer's showing and make appropriate [grant of freeport exemption if all conditions are satisfied]." *East West Express v. Collins*, supra at 775-776. "[I]t is the local taxing authority to whom motor vehicle owners

must demonstrate [freeport exemption]." Id. at 777.

The State Revenue Commissioner by law determines fair market value of all motor vehicles state-wide for "uniformity evaluation of all motor vehicles" and sets the assessment; the State Revenue Commissioner in turn sends such prepared lists to the respective county tax collectors for collection, i.e., the Tax Commissioner. OCGA §§ 48-5-442; 48-5-442.1. "The statutory scheme for ad valorem taxation of motor vehicles provides that every vehicle owned in this state on January 1 is subject to ad valorem taxation (OCGA § 48-5-471); that the State Revenue Commissioner shall prepare a uniform evaluation of vehicles for use as the taxable value of the vehicles (OCGA § 48-5-442); and that the tax shall be at the assessment level and mill rate levied by the taxing authority for the previous calendar year. OCGA § 48-5-443." *East West Express v. Collins*, supra at 775 (1). Therefore, a county board of tax assessors has no function or duty in assessing motor vehicles under OCGA § 48-5-299, because this is done by the Revenue Commissioner state-wide. The only duty a county board of tax assessors has under OCGA § 48-5-299 is to investigate and to determine if motor vehicles are returned, returned in the correct county, returned in the correct state, or to apportion the ad valorem tax between states where the vehicle is used in interstate commerce. See *East West Express v. Collins*, supra; OCGA §§ 48-5-299; 48-5-444 (a) (2); 48-5-451. None of such duties were applicable under the facts of this case. See OCGA §§ 48-5-299; 48-5-444 (a) (2); 48-5-451. Therefore, the Fulton County Board of Tax Assessors had no duties in this case under OCGA § 48-5-299 in the original action in superior court.

An assessment of personal property made in the manner prescribed by statute is indispensable to any proceedings to enforce the collection of ad valorem taxes. See *Colvard v. Ridley*, 218 Ga. 490 (128 SE2d 732) (1962); *Hutchins v. Howard*, 211 Ga. 830 (89 SE2d 183) (1955). "[A]ssessment when used in connection with the subject of taxation, includes all of the steps necessary to be taken in the legitimate exercise of the power to tax." *Georgia R. &c. Co. v. Redwine*, 208 Ga. 261, 266 (66 SE2d 234) (1951). Thus, later, in sending the October 29, 1996 notice of tax assessment, the Fulton County Board of Tax Assessors acted ultra vires, because such ministerial function was placed in the hands of the Tax Commissioner by the State Revenue Commissioner by statute, and valuation and assessments were made by the State Revenue Commissioner. See OCGA §§ 48-5-442; 48-5-445; 48-5-450.

OCGA § 48-5-450 procedure provides a direct appeal to the superior court, avoiding the normal, slower appeal procedure for contested ad valorem assessments that now goes through the county board of equalization before going to the superior court, which factor of speed is a consideration in determining the applicability of tax

appeal procedure. See OCGA § 48-5-311; Ga. L. 1967, pp. 91, 93-94, § 2A; OCGA § 48-5-450; *Gwinnett County Bd. of Tax Assessors v. Gwinnett I Ltd. Partnership*, 265 Ga. 645 (458 SE2d 632) (1995). The normal appeal procedure under OCGA § 48-5-311 is too slow going through the county board of equalization before going to the superior court at first term, as compared to a direct appeal to the superior court to be heard at first term under OCGA § 48-5-450, because the contested portion of tax does not have to be paid until final resolution of the appeal, and such non-payment would prevent the use of the motor vehicle until final resolution of the assessment dispute, since the issuance of a tag or decal would not occur until payment of all the ad valorem tax, absent the statute. Ga. L. 1967, pp. 91, 92-93, § 2; OCGA §§ 48-5-450; 48-5-473; 48-5-474; *G. H. Bass & Co. v. Fulton County Bd. of Tax Assessors*, 222 Ga. App. 118, 119 (2) (473 SE2d 253) (1996), rev'd on other grounds 268 Ga. 327 (486 SE2d 810) (1997); see generally as to speed of procedure *Gwinnett County Bd. of Tax Assessors v. Gwinnett I Ltd. Partnership*, supra. The affidavit of illegality makes the tax collector, i.e., the Tax Commissioner, the proper party against whom to contest the assessment instead of the county board of tax assessors. See Ga. L. 1967, pp. 91, 94, § 2A; Ga. L. 1978, pp. 309, 491-492, § 2; OCGA §§ 48-5-450; 48-5-475.

While OCGA § 48-5-441 classifies motor vehicles and mobile homes as separate classes of tangible property for ad valorem purposes, the General Assembly did not intend to exclude such class of tangible property from the ambit of OCGA § 48-5-48.2 for purposes of freeport exemption. The language of OCGA § 48-5-48.2 (a) (1) and (b) (3) carefully uses the all-encompassing descriptive term "inventory of finished goods," instead of "tangible property," because the General Assembly intended to include all classes of tangible property under the constitution without enumerating each so that there would be equal treatment to avoid constitutional implications as to equal protection, rational purpose, and disparate treatment. Ga. Const. of 1983, Art. I, Sec. I, Par. II and Art. VII, Sec. I, Par. III (a), (b) (1), (2); U. S. Const., Amendment XIV; *Fayette County Bd. of Tax Assessors v. Ga. Utilities Co.*, 186 Ga. App. 723, 724 (368 SE2d 326) (1988); *Novak v. Redwine*, 89 Ga. App. 755, 757 (81 SE2d 222) (1954). Further, since manufacturers of motor vehicles in Georgia are foreign corporations, to exclude motor vehicles as a separate class of tangible property from the freeport exemption provisions of OCGA § 48-5-48.2 might deny such non-resident corporations the same privileges accorded Georgia citizens. See U. S. Const. Art. IV, Sec. II. The purpose of the freeport exemption from ad valorem taxation, both as a constitutional provision and as to local referendum, was to promote and to keep local employment and economy high through maintaining or increasing manufacturing and commerce within Georgia counties.

Therefore, the exclusion of motor vehicle manufacture and wholesaling from freeport exemption, which industry historically has been a major industry in the metro Atlanta area with substantial employment and impact on the local economy, was not the intent of the General Assembly. With the many downsizings or closings of auto plants around the country, the ad valorem exemption was intended to induce the continued presence of such industry. Thus, the plain language of the freeport exemption was to be inclusive of all classes of tangible personal property, now or in the future. See *Apollo Travel Svcs. v. Gwinnett County Bd. of Tax Assessors*, supra at 791-792 (1); see generally Coalson, Freeport Exemption from Property Taxes for Inventory Stored in Georgia But Destined for Shipment Out-of-State, 28 Ga. St. B. J. 108 (1991).

Further, OCGA §§ 48-5-48.2 and 48-5-450 are to be construed in pari materia, so that the Tax Commissioner was the proper party in the action below and not the Fulton County Board of Tax Assessors. "[S]tatutes are not to be construed in a vacuum, but in relation to other statutes of which they are a part, and all statutes relating to the same subject-matter are to be construed together, and harmonized wherever possible. *Ryan v. Commrs. of Chatham County*, 203 Ga. 730 (1) (48 SE2d 86) (1948)." *East West Express v. Collins*, supra at 775. Further, OCGA § 48-5-445 requires that returns for motor vehicles be filed with the tax collector, i.e., the Tax Commissioner, and not the county board of tax assessors.

"[T]he legislature is presumed to enact statutes with full knowledge of the existing law. *Henry v. Wild Pines Apts.*, 177 Ga. App. 576 (340 SE2d 233) (1986)." *G. H. Bass & Co. v. Fulton County Bd. of Tax Assessors*, supra at 119 (2). OCGA § 48-5-440 et seq. is more specific than OCGA § 48-5-299 (and even OCGA § 48-5-48.1), and "a specific statute governs over a more general statute where they are in conflict. [Cit.]" *Ga. Mental Health Institute v. Brady*, 263 Ga. 591, 592 (2) (436 SE2d 219) (1993).

Since the Tax Commissioner was the proper party under OCGA § 48-5-450 and since the partial summary judgment became a final judgment upon the entry of the consent judgment on March 23, 1995, (OCGA §§ 5-6-34; 9-11-54 (b); 9-11-56 (h); 9-11-58), then the factual and legal basis for GM's freeport exemption under OCGA § 48-5-48.2 for 1993 and 1994 became res judicata as to what had been litigated, and collateral estoppel applied on such issue of exemption as to the Fulton County Board of Tax Assessors on all future, annual applications unless there was a substantial factual change.

OCGA § 9-12-40 provides that: "[a] judgment of a court of competent jurisdiction shall be conclusive between the same parties and their privies as to all matters put in issue or which under the rules of law might have been put in issue in the cause wherein the judgment

was rendered until the judgment is reversed or set aside." See *Mitcham v. Blalock*, 268 Ga. 644, 645-646 (2) (491 SE2d 782) (1997); *Fowler v. Vineyard*, 261 Ga. 454, 455 (405 SE2d 678) (1991); *Alford v. Smith*, 224 Ga. 802, 804 (164 SE2d 781) (1968). Thus, res judicata applied to the tax exemption for 1993 and 1994 and the tax refund.

"The doctrine of res judicata prevents the re-litigation of all claims which have already been adjudicated, or which could have been adjudicated, between identical parties or their privies in identical causes of action. . . . Three prerequisites must be satisfied before res judicata applies — (1) identity of the cause of action, (2) identity of the parties or their privies, and (3) previous adjudication on the merits by a court of competent jurisdiction." *Waldroup v. Greene County Hosp. Auth.*, 265 Ga. 864, 865-866 (1) (463 SE2d 5) (1995).

This case presented an "adjudication on the merits" in a court of competent jurisdiction, because "it is only where the merits were not *and* could not have been determined under a proper presentation and management of the case that res judicata is not [applicable]. If, pursuant to an appropriate handling of the case, the merits were or could have been determined, then [res judicata] is valid." (Emphasis in original.) *Piedmont Cotton Mills v. Woelper*, 269 Ga. 109, 110 (498 SE2d 255) (1998); see also *Gamble v. Gamble*, 204 Ga. 82, 88-89 (1) (48 SE2d 540) (1948).

"Collateral estoppel precludes the re-adjudication of an issue that has previously been litigated and adjudicated on the merits in another action between the same parties or their privies. Like res judicata, collateral estoppel requires the identity of the parties or their privies in both actions. However, unlike res judicata, collateral estoppel does not require identity of the claim — so long as the issue was determined in the previous action and there is identity of the parties, that issue may not be re-litigated, even as part of a different claim. Furthermore, collateral estoppel only precludes those issues that actually were litigated and decided in the previous action, or that necessarily had to be decided in order for the previous judgment to have been rendered. Therefore, collateral estoppel does not necessarily bar an action merely because the judgment in the prior action was on the merits. Before collateral estoppel will bar consideration of an issue, the issue must actually have been decided." *Waldroup v. Greene County Hosp. Auth.*, supra at 866-867. Collateral estoppel applies to the years 1995 and 1996 as to the freeport exemption for such years based upon substantially the same facts.

Under the statutory ad valorem taxing scheme, as a matter of necessity, the Fulton County taxing authority, the Tax Commissioner, and the Fulton County Board of Tax Assessors are in privity to avoid the relitigation of the same tax year at the time of assessment and of collection; in fact, the Supreme Court repeatedly refers

to them collectively as "local taxing authorities," or "tax officials." *Southern Tax Consultants v. Scott*, 267 Ga. 347, 348 (478 SE2d 126) (1996); *East West Express v. Collins*, supra at 775-776; *Container Corp. of Am. v. Charlton County*, 259 Ga. 389, 391 (1) (383 SE2d 105) (1989); *North By Northwest Civic Assn. v. Cates*, 241 Ga. 39, 43 (2) (243 SE2d 32) (1978); see also *Vann v. DeKalb County Bd. of Tax Assessors*, 186 Ga. App. 208, 211 (367 SE2d 43) (1988). The reason that the taxing authorities must be privies is that "it is imperative that these appeals be heard promptly so that the governing authority can rely on the revenue collected based on the values established for taxable property for each year. In contrast to condemnation or probate matters [cits.] where the issue in the appeal is in general in need of one-time resolution, the question of tax assessment occurs annually and is inextricably bound up with the public interest." *Haldi v. DeKalb County Bd. of Tax Assessors*, 178 Ga. App. 521, 525 (2) (344 SE2d 236) (1986); see also *Gwinnett County Bd. of Tax Assessors v. Gwinnett I Ltd. Partnership*, supra.

The consent judgment stated: "[p]rovided that General Motors Corporation properly applies for freeport exemption pursuant to applicable state and county law, all motor vehicles held by General Motors Corporation at the Atlanta Auto Auction at 1900 Buffington Road, Red Oak, Fulton County, Georgia on January 1 of each year which are to be sold to out-of-state destinations are exempt from ad valorem taxation under the freeport-exemption provided under OCGA § 48-5-48.2 and Code of Fulton County, § 26-2-11."

There is nothing in such consent judgment that collateral estoppel from the summary judgment did not already bind the Fulton County Board of Tax Assessors to do. *Waldroup v. Greene County Hosp. Auth.*, supra at 866-867. Under the unified taxing statutory scheme, since the local taxing authorities are privies, then the consent judgment also bound the Fulton County Board of Tax Assessors. The Fulton County Board of Tax Assessors was precluded only from relitigating the basis for GM's freeport exemption and not any substantial factual change.

Further, GM's claim for freeport exemption was meritorious and, under the undisputed facts in the record, mandated the grant of partial summary judgment and final judgment, because GM was the manufacturer, had merely leased the vehicles, and held them as "inventory of finished goods" for "resale purposes" for shipment out-of-state and not for sale and "shipment to its retail customers," which it did not have. OCGA § 48-5-48.2 (a); *Apollo Travel Svcs. v. Gwinnett County Bd. of Tax Assessors*, supra at 793.

"[I]t is a cardinal rule in the construction of grants of exemptions from taxation, whether such grants be by statute or the constitution, that such exemptions should be strictly construed in favor of the public,

and that nothing passes by implication." *Lowry v. McDuffie*, 269 Ga. 202, 204 (2) (496 SE2d 727) (1998) (quoting *Salvation Army v. Strickland*, 253 Ga. 758, 759 (325 SE2d 147) (1985), in turn quoting *City of Columbus v. Muscogee Mfg. Co.*, 165 Ga. 259 (1) (140 SE 860) (1927)). "On the other hand, if the language of a statute is plain and susceptible of but one natural and reasonable construction, the court has no authority to place a different construction upon it, but must construe it according to its terms." (Punctuation omitted.) *Lowry v. McDuffie*, supra at 204 (quoting *Garrard v. Hicks*, 266 Ga. 181, 182 (465 SE2d 665) (1996), in turn quoting *Rayle EMC v. Cook*, 195 Ga. 734, 735 (25 SE2d 574) (1943)). "Therefore, looking to the real intent and meaning of the statute [cit.] and reading the statute according to the natural and most obvious import of its terms [cit.], we find that [GM] is . . . entitled to a freeport exemption for these [motor vehicles]. Accordingly, under these circumstances the superior court did not err in [granting GM's] request for a freeport exemption." *Apollo Travel Svcs. v. Gwinnett County Bd. of Tax Assessors*, supra at 793.

2. Under the motion to set aside the prior judgments under OCGA § 9-11-60 (a), Division 1 controls adversely to the Tax Commissioner that the judgment is not void on its face. "[T]he Supreme Court has expressly limited judgments void on their faces under subsection [OCGA § 9-11-60 (a)] to 'those judgments which lack either personal or subject matter jurisdiction.' *Murphy v. Murphy*, 263 Ga. 280, 282 (430 SE2d 749) (1993)." *Utica Mut. Ins. Co. v. Mitchell*, 227 Ga. App. 830, 831-832 (490 SE2d 489) (1997). Neither defense was raised in this case. See *Alford v. Smith*, supra.

The Tax Commissioner seeks to set aside the consent judgment by going outside the record before the trial court on grounds that his lawyers had no authority to enter such settlement. On this motion to set aside the judgments of the trial court, the Tax Commissioner failed to submit any evidence under oath to prove his allegations that his counsel had no authority to enter into the consent judgment, that he was not aware of the settlement, that he did not authorize the settlement, and that he did not ratify such settlement. The record is also silent as to whether or not the Tax Commissioner or one of his agents was present in open court when his attorneys made the "distinct and formal admission[ ] of fact . . . made for the express purpose of dispensing with formal proof" at the motion for summary judgment that the Tax Commissioner had no evidence in opposition to the grant of the motion and consented to its grant, because the facts authorized the grant of the motion. *National Assn. for the Advancement of Colored People v. Pye*, 96 Ga. App. 685, 686 (101 SE2d 609) (1957); see also *Whatley v. State*, 189 Ga. App. 173, 175 (4) (375 SE2d 245) (1988); *McCoy v. McSorley*, 119 Ga. App. 603, 604 (2) (168 SE2d 202) (1969).

"If [the Tax Commissioner's motion] should be treated as a motion to set aside the verdicts and judgment for matters not appearing upon the face of the record, it is fatally defective for the want of . . . evidence. [Cits.]" *Johnson v. Johnson*, 188 Ga. 800, 802 (4 SE2d 807) (1939). "The burden of proof below was on the [Tax Commissioner] to prove the allegations of [his] motion to set aside, i.e., that [his attorneys had no authority to enter into the consent judgment], and on the record we have, [he] did not sustain that burden." *Gainesville Fin. Svcs. v. McDougal*, 154 Ga. App. 820, 823 (270 SE2d 40) (1980); see also *American Liberty Ins. Co. v. Sanders*, 122 Ga. App. 407, 410 (3) (177 SE2d 176) (1970); *Lewis v. Termplan*, 124 Ga. App. 507, 508 (184 SE2d 473) (1971).

Therefore, we never reach the issues raised by the Tax Commissioner's allegations, because he failed to submit any evidence to make the cases of *City of Atlanta v. Black*, 265 Ga. 425 (457 SE2d 551) (1995) ("*Black*") and *Brumbelow v. Northern Propane Gas Co.*, 251 Ga. 674 (2) (308 SE2d 544) (1983) applicable. Both cases dealt with issues outside the record and the lack of authority of a party's attorney to settle and, in both cases, the movants perfected the record by evidence on such issue. *Black*, supra at 425; see also *Black v. City of Atlanta*, 35 F3d 516 (11th Cir. 1994); *Brumbelow v. Northern Propane Gas Co.*, 169 Ga. App. 816 (315 SE2d 11) (1984).

### Case No. A98A1695

GM's enumeration of error is that the trial court erred in denying it attorney fees under OCGA §§ 9-15-14 and 13-6-11. We agree.

The trial court held that OCGA § 9-15-14 could not apply because the underlying action had become a final disposition without a request by GM within 45 days of the entry of judgment. Such is correct as to attorney fees regarding the original action up to and including the consent judgment. See *Fairburn Banking Co. v. Gafford*, 263 Ga. 792, 793 (439 SE2d 482) (1994); *Gist v. DeKalb Tire Co.*, 223 Ga. App. 397 (477 SE2d 616) (1997). However, such cases do not deal with ancillary proceedings to enforce the judgment, which by the very nature of the proceeding must come after the final disposition of the action and to which attorney fees apply exclusively to the ancillary action caused by conduct after the final disposition. See *Little v. General Motors Corp.*, 229 Ga. App. 781, 782 (495 SE2d 572) (1997).

The motion to compel enforcement of the consent judgment was substantially a new OCGA § 48-5-450 appeal to the superior court as to the tax year 1996. As a separate and distinct dispute between the same parties, this proceeding was not a final disposition; the order of October 9, 1997, was a final disposition as to the tax year 1996 and the issue of enforcement. See OCGA § 9-15-14 (b); *Wright v. Stuart*,

229 Ga. App. 50, 51 (494 SE2d 212) (1997); *Thompson v. Pulte Home Corp.*, 209 Ga. App. 558, 559-560 (434 SE2d 89) (1993).

Such expenses under OCGA § 9-15-14 would only apply to attorney fees and expenses of litigation incurred since the entry of the consent judgment. OCGA § 9-15-14 does not authorize the trial court to award expenses and attorney fees before an appellate court proceeding. *Bankhead v. Moss*, 210 Ga. App. 508, 510 (2) (436 SE2d 723) (1993); *Castro v. Cambridge Square Towne Houses*, 204 Ga. App. 746 (420 SE2d 588) (1992).

OCGA § 13-6-11 is also applicable if GM can show bad faith of the Tax Commissioner in entering into the consent judgment or subsequently in refusing to obey the judgment of the trial court. See *Toncee, Inc. v. Thomas*, 219 Ga. App. 539, 543 (466 SE2d 27) (1995); accord *Stone v. King*, 196 Ga. App. 251, 253 (396 SE2d 45) (1990). When a party has to resort to litigation to enforce an agreement, such circumstances may authorize an award of litigation expenses under OCGA § 13-6-11. See *Clayton v. Deverell*, 257 Ga. 653, 656 (362 SE2d 364) (1987); *Stone v. King*, supra.

The real significance as to which statute to apply on remand is that the language of each statute is different. OCGA § 9-15-14 does not authorize the award of appellate litigation expenses, while such issue has never been raised under OCGA § 13-6-11.

*Judgment affirmed in Case No. A98A1694. Judgment reversed and remanded in Case No. A98A1695. McMurray, P. J., and Blackburn, J., concur.*

DECIDED SEPTEMBER 18, 1998 —

*Vernitia A. Shannon, Jacqueline S. Groover, William R. Turner*, for appellant.

*King & Spalding, Nolan C. Leake, Claria D. Horn*, for appellee.