A08A0901. AIRCRAFT SPRUCE & SPECIALTY COMPANY et al. v. FAYETTE COUNTY BOARD OF TAX ASSESSORS.

(669 SE2d 417)

MILLER, Judge.

This action arises out of a ruling by the Fayette County Board of Tax Assessors (the "Board"), that certain inventory held by Aircraft Spruce & Specialty Company, a division of Irwin International, Inc. ("Irwin"), at its Peachtree City warehouse was not exempt from ad valorem taxes under OCGA § 48-5-48.2 (b). After that ruling was affirmed by a board of equalization, Irwin filed an appeal in the Superior Court of Fayette County. The parties filed cross-motions for summary judgment, and the trial court granted summary judgment in favor of the Board and against Irwin. The trial court found that the exemption sought by Irwin did not apply to the inventory in question, because, even though such inventory was purchased by and shipped to out-of-state customers, that inventory was nevertheless being sold "at retail" in Georgia. Irwin now appeals from that ruling, arguing that its catalog and Internet retail sales to out-of-state customers cannot be considered retail sales made in Georgia. We disagree and affirm.

The facts are undisputed and the issue before us is whether, in finding that Irwin was not entitled to the tax exemption it sought, the trial court correctly interpreted and applied the relevant statutes. "This question is one of law, which we review de novo." (Citation omitted.) *State of Ga. v. Free At Last Bail Bonds*, 285 Ga. App. 734 (647 SE2d 402) (2007).

The record shows that Irwin is a privately held, California corporation that sells aircraft parts and pilot supplies to both retail customers and wholesalers throughout the United States. Irwin markets its products through a printed catalog and a website and customers order products from Irwin using either the Internet or a toll-free telephone number. The orders are then filled from one of two warehouse facilities maintained by Irwin, one of which is located in Peachtree City. Most orders are shipped directly to the customer, but the company also maintains a "will-call" area at its warehouse in Peachtree City where customers may pick up previously placed orders, thereby avoiding shipping costs. Irwin also makes occasional "walk-in" sales at its Peachtree City facility.

In 2005 (the year prior to the assessment date at issue), approximately 84 percent of the sales made from Irwin's Peachtree City warehouse were retail sales, with 7.2 percent being retail sales to customers residing in Georgia and 76.71 percent being retail sales to out-of-state residents. Additionally, 1.34 percent of sales from the Peachtree City warehouse were made to Georgia wholesalers, and 14.73 percent were made to out-of-state wholesalers.

Under Georgia law, a retailer may be assessed ad valorem taxes based on the value of its inventory as of January 1. Certain inventory, however, is exempt from taxes under OCGA § 48-5-48.2 (b), commonly known as the "freeport exemption." The relevant portions of this statute exempt from the ad valorem tax those finished goods in a retailer' s inventory that, as of January 1: (i) are stored in a warehouse; and (ii) are destined for shipment to a final destination outside of Georgia. OCGA § 48-5-48.2 (b) (3).

Specifically excluded from the freeport exemption, however, is otherwise eligible inventory that constitutes the "stock in trade of a retailer," which is defined as "finished goods held by one in the business of making sales of such goods at retail in this state, . . . when such goods are held or stored at a business location from which such retail sales are regularly made." OCGA § 48-5-48.2 (a) (4). An exception to this exclusion, found within the statutory definition of the "stock in track of retailer," provides:

> Goods stored in a warehouse, . . . including a warehouse . . . which is part of or adjoins a place of business from which retail sales are regularly made, shall not be considered stock in trade of a retailer to the extent that the taxpayer can establish, through a historical sales or shipment analysis, . . . or other reasonable, documented method, the portion or percentage of such goods which is reasonably anticipated to be shipped outside this state for resale purposes.

OCGA § 48-5-48.2 (a) (4).

As of January 1, 2006, Irwin's Peachtree City warehouse contained inventory valued at approximately $3.1 million. Irwin filed for a freeport exemption as to 91.44 percent of that inventory, based on the fact that 91.44 percent of its sales in the previous year from the Peachtree City warehouse had been to out-of-state customers, both retail and wholesale. The Board instead allowed an exemption for roughly 15 percent of the inventory, citing the fact that this represented the percentage of sales Irwin had made to out-of-state wholesalers and reasoning that inventory that was the subject of out-of-state retail sales represented the "stock in trade of a retailer."

Irwin appealed that ruling, arguing that the freeport exemption should apply to all out-of-state sales, both retail and wholesale. In support of its position, Irwin first asserts that retail sales made via the telephone or Internet to an out-of-state customer are not sales "at retail in this state," i.e., they are not sales that occur in Georgia. It then reasons that, because such transactions do not qualify as retail sales in this state, by default they must be considered the shipment of goods outside the state "for resale purposes." We disagree.

> The burden of proof in a tax appeal to the superior court is on the party who initiated the appeal. Therefore, in this case the burden was on [Irwin]. Further, laws granting an exemption from taxation must be construed strictly in favor of the taxing authority, and all doubts must be resolved against the taxpayer. Consequently, no exemption will be allowed unless the exemption is clearly and distinctly intended by the legislature.

(Citations omitted.) *Apollo Travel Svcs. v. Gwinnett County Bd. of Tax Assessors*, 230 Ga. App. 790, 791 (1) (498 SE2d 297) (1998). Additionally, we must read the relevant statute "according to [the] natural and most obvious import of the language without resorting to subtle and forced constructions for the purpose of either limiting or extending its operation," and this interpretation "must square with common sense and sound reasoning." (Citations and punctuation omitted.) Id. at 792 (3).

As a practical matter, we find that in determining whether a retail sale is made in this State, we must look to the location and conduct of the seller, rather than the location of the buyer. Here, all aspects of the retail sales made from Irwin's Peachtree City warehouse to Internet and telephone customers occur in Georgia. Irwin receives telephone and Internet orders at the Peachtree City warehouse, and also receives the payment for such orders at that facility.

244

It thereafter processes the orders in Peachtree City, fills the orders from inventory located in Peachtree City, and packages and ships the orders from that location. Thus, with respect to each of these telephone and Internet retail transactions, *all* of the seller's conduct occurs in this State. Logically, therefore, these transactions qualify as retail sales occurring in Georgia.

This conclusion is supported by our decision in *Apollo*, supra, 230 Ga. App. 790. In that case, the taxpayer, Apollo, distributed computer software and hardware to its clients around the country for use in a computer travel reservation system. Apollo owned the computer hardware and leased it to its customers, 97 percent of whom were located outside of Georgia. Apollo stored such equipment at a warehouse in Gwinnett County and sought a freeport exemption for that inventory. On appeal, this Court upheld the denial of the exemption, finding that Apollo's inventory did not meet the definition of "inventory of finished goods" as contemplated by OCGA § 48-5-48.2, because the computers were not "goods being held for shipment to final destinations outside [Georgia] for resale." Id. at 793 (4). Noting that Apollo was holding this inventory "merely for shipment to its retail customers," this Court concluded that the computers were in the nature of Apollo's stock-in-trade and did not qualify for the freeport exemption. Id. Notably, the fact that 97 percent of these computers would be shipped to out-of-state customers did not impact our analysis.[1]

The conclusion that the freeport exemption does not apply to the retail sales at issue is also supported by the relevant rules of statutory interpretation, which require us to construe that statute "in relation to other statutes of which it is a part," reading all statutes together "so as to ascertain the legislative [intent] and give effect thereto." (Citation and punctuation omitted.) *Goldberg v. State*, 282 Ga. 542, 546-547 (651 SE2d 667) (2007). See also *Sikes v. State*, 268 Ga. 19, 21 (2) (485 SE2d 206) (1997) ("in construing language in any one part of a statute, a court should consider the entire scheme of the statute and attempt to gather the legislative intent from the statute as a whole") (footnote omitted). Thus, in determining whether Internet and telephone sales to out-of-state consumers constitute retail sales occurring in Georgia, we look to OCGA § 48-8-2 (6) (A). That statute defines "retail sale" and "sale

[1] Irwin attempts to distinguish *Apollo* by pointing to the fact that Apollo's inventory would be leased, rather than sold, to customers. Therefore, that inventory could not be viewed as being shipped out-of-state "for resale purposes." This "distinction," however, ignores the fact that the retail goods Irwin sells via catalog and the Internet are not being shipped outside the state "for resale purposes" – i.e., they will not be resold to another consumer once they reach their out-of-state destination.

at retail," in relevant part, as "[a] sale to a consumer or to any person *for any purpose other than for resale* of tangible personal property. . . ." (Emphasis supplied.) Under this definition, any sale to the final, end user of consumer goods constitutes a retail sale. We must conclude, therefore, that the term "for resale purposes," as used in OCGA § 48-5-48.2 (a) (4), expressly excludes from the freeport exemption any merchandise sold at retail, regardless of whether the sale is made to a resident or nonresident of Georgia. Had the legislature intended for all sales to out-of-state customers — both retail and wholesale — to come within the freeport exemption, then there would have been no need to add the qualifying phrase "for resale purposes" at the end of OCGA § 48-5-48.2 (a) (4). And, we refuse to read the statute so as to make that phrase irrelevant. See *Osborne Bonding & Surety Co. v. State of Ga.*, 224 Ga. App. 590, 591 (481 SE2d 578) (1997) ("We must seek to effectuate the intent of the legislature and to . . . avoid [statutory] constructions that make some language mere surplusage . . . , because it is not presumed that the legislature intended to enact meaningless language.") (citations omitted).

Despite the foregoing, Irwin argues that, by definition, retail sales made via catalog and the Internet to out-of-state customers are not sales at "retail *in this state*." In essence, Irwin asserts that whether a retail sale occurs in Georgia depends not upon the seller's conduct, but upon the location of the purchaser. To support its position, Irwin points to the fact that such transactions are not subject to the state sales tax. Sales taxes, however, are imposed on the purchaser of goods, rather than the seller. See OCGA § 48-8-30 (b) (1). As a result, sales taxes generally do not apply to out-of-state retail customers, because Georgia's taxing authority does not reach beyond the state's boundaries. See Ga. Comp. R. & Regs. r. 560-12-2-.54 (2). Thus, the absence of a sales tax merely demonstrates that the merchandise was shipped to an out-of-state customer; it does not demonstrate that the sale did not occur in Georgia.[2]

Irwin also argues that a finding that telephone and Internet sales to out-of-state customers constitute retail sales in Georgia will produce an absurd or illogical result in the application of the freeport exemption, thereby violating well-established principles of statutory interpretation. See *Rite-Aid Corp. v. Davis*, 280 Ga. App. 522, 526 (1) (634 SE2d 480) (2006). Specifically, Irwin asserts that if it did not have a "will-call" area at the Peachtree City warehouse, then none of

---

[2] Indeed, if such sales did not occur in Georgia, there would be no need for the Department of Revenue regulation expressly exempting these transactions from the otherwise applicable sales tax.

its inventory could be considered the "stock in trade of a retailer" and therefore all of that inventory would be entitled to the freeport exemption. We disagree.

Irwin is subject to the ad valorem tax at issue not because it makes retail sales to customers who come to the Peachtree City warehouse. Rather, Irwin is subject to that tax because it is a retailer and all inventory sold at retail represents its "stock in trade." Thus, even if Irwin made no retail sales to Georgia residents and had no "will-call" window at its Peachtree City warehouse, its retail inventory still would not qualify for the freeport exemption.

Nor do we find any merit in Irwin's argument that the trial court's interpretation of the statute violates the constitutional principle that all taxation of similar goods must be uniform — i.e., that it treats goods sold over the Internet and via catalog differently from those sold by traditional retailers. To support its argument, Irwin poses a hypothetical in which it has traditional retail stores located out of state. If items were shipped to those stores from the Peachtree City warehouse, it notes, those items would be entitled to the freeport exemption. Thus, Irwin concludes that it is being punished for selling its items directly over the Internet and by catalog.

Given that this self-serving hypothetical compares "apples to oranges," we find it unpersuasive. If Irwin had additional out-of-state facilities from which it made Internet and catalog retail sales, then any inventory shipped from its Peachtree City warehouse to those facilities would, like the inventory of a traditional retailer shipped to an out-of-state store, be eligible for the freeport exemption. In either case, such inventory is being shipped out-of-state for resale purposes. Similarly, Irwin is being treated no differently than a traditional retailer in Georgia who has no out-of-state stores. The inventory of such a retailer would, like Irwin's retail inventory, be subject to an ad valorem tax, even if that traditional retailer also sold its items over the Internet or the telephone. Accordingly, we fail to see how the refusal to apply the freeport exemption to retail merchandise sold only through the Internet or catalogs disadvantages retailers such as Irwin.[3]

For the reasons set forth above, we affirm the trial court's order granting summary judgment in favor of the Board and against Irwin.

---

[3] Arguably, such retailers have a tax advantage over traditional retailers, because out-of-state customers purchasing from Internet or catalog retailers may or may not have to pay tax on the goods purchased. Yet, if they purchased identical items from a traditional retailer, either in their own state or in a neighboring state, they would definitely be subject to state and local sales tax. It appears that Irwin is seeking to add to this advantage by avoiding an ad valorem tax that is imposed on all traditional retailers in Georgia.

*Judgment affirmed. Blackburn, P. J., and Ellington, J., concur.*

DECIDED OCTOBER 27, 2008 —

*Smith, Gambrell & Russell, Edward H. Wasmuth, Jr.*, for appellants.
*Donald M. Comer II*, for appellee.