A10A1856. MUSCOGEE COUNTY BOARD OF TAX ASSESSORS
v. PACE INDUSTRIES, INC.

(705 SE2d 678)

MIKELL, Judge.

The Muscogee County Board of Tax Assessors (the "Board") appeals from the trial court's grant of summary judgment to Pace Industries, Inc. ("Pace"), in an ad valorem tax dispute concerning the availability of the freeport exemption[1] for inventory held by Pace in Georgia. Pace applied for the freeport exemption for the tax year 2006 for its inventory of barbecue grill bodies stored in the Columbus warehouse that it leased. The Board ruled that the inventory in question was not exempt from ad valorem taxes under OCGA § 48-5-48.2 (b) and denied the freeport exemption. After that ruling was affirmed by the board of equalization, Pace appealed to the Superior Court of Muscogee County. The parties filed cross-motions for summary judgment, and the court granted summary judgment in favor of Pace and against the Board. The trial court concluded that Pace's inventory of grill bodies qualified for the freeport exemption found in OCGA § 48-5-48.2 (b) (3) (a "Category 3" exemption), because the grill bodies are destined for shipment to "a final destination outside this state."[2] The Board appeals from this order. We conclude that the freeport exemption does not apply to the grill bodies at issue here, and we reverse.

On appellate review of the grant or denial of a motion for summary judgment, we conduct a de novo review of the law and the evidence,[3] and we view the evidence in the light most favorable to the nonmovant.[4] "When a question of law is at issue, as here, we owe no

---

[1] See OCGA §§ 48-5-48.1; 48-5-48.2.

[2] See OCGA § 48-5-48.2 (a) (1), (b) (3).

[3] *Clayton County Bd. of Tax Assessors v. City of Atlanta*, 286 Ga. App. 193, 194 (648 SE2d 701) (2007).

[4] *Delta Air Lines v. Clayton County Bd. of Tax Assessors*, 246 Ga. App. 225, 226 (539 SE2d 905) (2000).

deference to the trial court's ruling and apply the 'plain legal error' standard of review."[5]

The facts in this case are undisputed. Pace, a wholly-owned subsidiary of Leggett & Platt, Inc., operates a manufacturing facility in Arkansas. There Pace manufactures barbecue grill bodies, which are die-cast aluminum bodies for gas and charcoal barbeque grills. Pace ships the grill bodies from its Arkansas plant to a warehouse it leases in Columbus, where they are stored until they are needed by Char-Broil, a producer and distributor of barbecue grills located in Columbus. Char-Broil is one of Pace's major customers for the grill bodies, and Pace manufactures the grill bodies to Char-Broil's specifications. Pace sells and delivers the grill bodies to Char-Broil at Char-Broil's Columbus plant. Char-Broil incorporates the grill bodies into finished barbecue grills, which Char-Broil then ships to its customers, mainly large retail stores. The record reflects that during calendar year 2003, Char-Broil shipped 94.4 percent of its completed grills to customers outside the state of Georgia.[6]

Pace argues that the grill bodies qualify for the freeport exemption because they are sold to Char-Broil, which then ships them out of state once they are incorporated into finished barbecue grills. The trial court accepted this argument, ruling that the grill bodies are "destined for shipment to a final destination outside this state," as contemplated by OCGA § 48-5-48.2. We disagree, because as far as Pace is concerned, the final destination of the grill bodies is Char-Broil's Columbus plant. Thus, we conclude that the grill bodies do not qualify for the freeport exemption.

The Category 3 freeport exemption, at issue here, applies generally to "inventory of finished goods held for shipment outside the state."[7] Category 3 inventory is described at OCGA § 48-5-48.2 (b) (3), and includes:

Inventory of finished goods which, on January 1, are stored in a warehouse, dock, or wharf, whether public or private, and which are destined for shipment to a final destination outside this state and inventory of finished goods which are shipped into this state from outside this state and stored for transshipment to a final destination outside this state. The

[5] (Citation and punctuation omitted.) *City of Atlanta*, supra. Accord *Delta Air Lines*, supra.

[6] The instant case concerns tax year 2006. By agreement, the parties submitted cross-motions for summary judgment and related briefing which had been filed in a companion case pending before the superior court, relating to tax year 2004. The sole difference between the two cases was the amount of exemption claimed.

[7] (Footnote omitted.) *Delta Air Lines*, supra at 227.

exemption provided for in this paragraph shall be for a period not exceeding 12 months from the date such property is stored in this state.[8]

Thus, to qualify for a Category 3 freeport exemption, the inventory in question must be (1) "finished goods"; (2) in Georgia for less than 12 months; and (3) "destined for shipment to a final destination outside this state." Pace records the grill bodies as "finished goods" for inventory accounting purposes on its books and records, and the Board concedes that Pace's inventory of grill bodies constitutes "finished goods," as defined in OCGA § 48-5-48.2 (a) (2).[9] The Board also concedes that Pace stores the grill bodies in Georgia for less than the 12-month statutory maximum, based on an average inventory turnover rate of 47.1 days for tax year 2004. The Board contends, however, that the grill bodies do not meet the third test necessary to qualify for the Category 3 freeport exemption. Thus, the issue presented here is whether the grill bodies are "destined for shipment to a final destination outside this state."[10]

OCGA § 48-5-48.2 (a) (1) provides that inventory "[d]estined for shipment to a final destination outside this state" includes "that portion or percentage of an inventory of finished goods which . . . is reasonably anticipated to be shipped to a final destination outside this state."[11] That goods are "reasonably anticipated" to be shipped out of state must be established by the taxpayer "through a historical sales or shipment analysis, either of which utilizes information from the preceding calendar year, or other reasonable, documented method."[12]

We note that this is a case of first impression, and disposition of this appeal requires construing the statutes authorizing the freeport exemption.[13] "[L]aws granting an exemption from taxation must be construed strictly in favor of the taxing authority, and all doubts must be resolved against the taxpayer. Consequently, no exemption will be allowed unless the exemption is clearly and distinctly intended by the legislature."[14] At the same time, "[i]n construing a

---

[8] OCGA § 48-5-48.2 (b) (3).

[9] Under OCGA § 48-5-48.2 (a) (2), "[f]inished goods" includes "goods, wares, and merchandise of every character and kind but shall not include unrecovered, unextracted, or unsevered natural resources or raw materials or goods in the process of manufacture or production or the stock in trade of a retailer."

[10] OCGA § 48-5-48.2 (a) (1), (b) (3).

[11] OCGA § 48-5-48.2 (a) (1).

[12] Id.

[13] See *Delta Air Lines*, supra at 226.

[14] (Citation omitted.) *Aircraft Spruce &c. Co. v. Fayette County Bd. of Tax Assessors*, 294 Ga. App. 241, 243 (669 SE2d 417) (2008).

legislative act, a court must first look to the literal meaning of the act. If the language is plain and does not lead to any absurd consequences, the court simply construes it according to its terms and conducts no further inquiry."[15] Our interpretation of the statute "must square with common sense and sound reasoning. . . . In this sense, a statute should be read according to its natural and most obvious import of the language without resorting to subtle and forced constructions for the purpose of either limiting or extending its operation."[16]

Pace contends that the grill bodies are "destined for shipment to a final destination outside this state" because they are sold by Pace to Char-Broil and then sold by Char-Broil to customers outside Georgia. Pace concludes that *"nothing* in the statute makes it relevant that the grill bodies are first sent to Char-Broil before being shipped outside the state." However, this argument does not take into account the facts of this case. Pace does not merely *send* the grill bodies to Char-Broil; Pace *sells* them to Char-Broil. Pace argues that the change in title does not make any difference, but in light of the statutory scheme, this argument cannot stand. "Statutes are not to be construed in a vacuum, but in relation to other statutes of which they are a part, and all statutes relating to the same subject-matter are to be construed together, and harmonized wherever possible."[17]

Unless exempted, Georgia law imposes ad valorem tax on all personal property.[18] The tax is charged against the owner of the property.[19] The taxpayer is obligated to make tax returns of the property;[20] and the return covers "property held and subject to taxation on January 1 next preceding each return."[21] The tangible personal property exemption known as the freeport exemption is available for certain business inventory described in OCGA § 48-5-48.2 (b). Under OCGA § 48-5-48.1 (a), the entity seeking the freeport exemption is required to file a written application and schedule of the property for which the exemption is sought.[22] Thus,

---

[15] (Citation and punctuation omitted.) *Apollo Travel Svcs. v. Gwinnett County Bd. of Tax Assessors*, 230 Ga. App. 790, 791-792 (3) (498 SE2d 297) (1998).

[16] (Citations and punctuation omitted.) Id. at 792 (3). Accord *Aircraft Spruce*, supra.

[17] (Citations and punctuation omitted.) *Fulton County Tax Commr. v. Gen. Motors Corp.*, 234 Ga. App. 459, 464 (1) (507 SE2d 772) (1998).

[18] OCGA § 48-5-3 ("all personal property shall be liable to taxation and shall be taxed, except as otherwise provided by law").

[19] OCGA § 48-5-9 ("Taxes shall be charged against the owner of property if the owner is known").

[20] OCGA § 48-5-10 ("All property shall be returned by the taxpayers for taxation to the tax commissioner or tax receiver as provided by law").

[21] Id.

[22] See OCGA § 48-5-48.1 (a).

the statutory scheme looks to the property, that is, the inventory, held by the taxpayer;[23] what becomes of the inventory in the hands of a purchaser from the taxpayer is not relevant to the determination of the availability of the freeport exemption. As far as Pace is concerned, the "final destination" of the grill bodies constituting the inventory here at issue is the Columbus plant of Char-Broil.

Our decision in *Aircraft Spruce*[24] is instructive. There, we held that the freeport exemption did not apply to the inventory of a retailer engaged in the business of selling aircraft parts to customers outside Georgia over the internet, because the sales occurred in Georgia.[25] We noted that "in determining whether a retail sale is made in this [s]tate, we must look to the location and conduct of the seller, rather than the location of the buyer."[26] Similarly, here we look to the conduct of Pace, the seller. Pace's involvement with the grill bodies ends when Pace sells them to Char-Broil, and therefore the "final destination" of the grill bodies is the Char-Broil plant located in Columbus. It follows that the grill bodies sold to Char-Broil do not fall within the Category 3 freeport exemption found in OCGA § 48-5-48.2 (b) (3). Char-Broil incorporates the grill bodies into finished barbecue grills, and it is these completed barbecue grills that Char-Broil eventually ships out of state.

For the reasons stated above, we reverse the decision of the trial court.

*Judgment reversed. Smith, P. J., and Adams, J., concur.*

DECIDED JANUARY 5, 2011.

*Page, Scrantom, Sprouse, Tucker & Ford, Travis C. Hargrove, Kirsten C. Stevenson*, for appellant.
*Alston & Bird, Mary T. Benton, Timothy J. Peaden*, for appellee.

---

[23] Cf. *Aircraft Spruce*, supra at 242 ("Under Georgia law, a retailer may be assessed ad valorem taxes based on the value of *its* inventory as of January 1") (emphasis supplied).

[24] Id.

[25] Id. at 244.

[26] Id. at 243 (retail sales occurred at taxpayer's warehouse in Georgia, where orders were received, processed and filled) (id. at 243-244).