**SECOND DIVISION**
**MERCIER, C. J.,**
**MILLER, P. J. and HODGES, J.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**https://www.gaappeals.us/rules**

**July 13, 2023**

# In the Court of Appeals of Georgia

A23A0655. DUNN et al. v. CITY OF STONECREST et al.
A23A0656. METRO GREEN RECYCLING THREE, LLC v. CITY OF STONECREST et al.

MERCIER, Judge.

In these related appeals involving a solid waste handling permit, the Environmental Protection Division of the Georgia Department of Natural Resources ("EPD"), its director, Richard E. Dunn, and Metro Green Recycling Three, LLC ("Metro Green") appeal from the trial court's order granting summary judgment to the City of Stonecrest ("Stonecrest") and the Citizens for a Healthy and Safe Environment ("CHASE"). For reasons that follow, we reverse in part, vacate in part, and remand with direction.

Summary judgment is appropriate when no genuine issues of material fact remain and the moving party is entitled to judgment as a matter of law. See OCGA

§ 9-11-56 (c). We review the grant of summary judgment de novo, construing the evidence and all reasonable inferences therefrom in the light most favorable to the non-moving party. See *Muscogee County Bd. of Tax Assessors v. Pace Indus.*, 307 Ga. App. 532, 532 (705 SE2d 678) (2011).

So viewed, the record shows the following. In 2016, Stonecrest was established as a city within DeKalb County, Georgia, and a two-year transition period to full-governance commenced on May 8, 2017.[1] During the transition period, DeKalb County "continue[d] to provide within the territorial limits of [Stonecrest] all government services and functions which [the county] provided in 2016[.]"

In early 2018, Metro Green commenced plans to build a construction recycling facility within Stonecrest, through which it would recycle used concrete and other construction materials. It contracted to purchase a large piece of property for the facility, applied for a business license, and requested assurance from the city that the property could be used for recycling operations. Stonecrest responded that Metro Green's "proposed recycling activities . . . are allowed on the subject property."

---

[1] "When a new municipal corporation is created by local Act, the local Act may provide for a transition period not to exceed 24 months for the orderly transition of governmental functions from the county to the new municipal corporation." OCGA § 36-31-8 (a).

2

Thereafter, Metro Green acquired the land for the facility and continued the development process, which included applying for a solid waste handling permit from EPD.

Pursuant to the Georgia Comprehensive Solid Waste Management Act ("the Act"), OCGA § 12-8-20 et seq., an applicant seeking a solid waste handling permit must provide written verification to EPD that, among other things, "the proposed facility is consistent with the local, multijurisdictional, or regional solid waste management plan" ("SWMP"), and "the host jurisdiction and all jurisdictions generating solid waste destined for the applicants' facility can demonstrate that they are part of an approved [SWMP.]" OCGA § 12-8-24 (g). To this end, Metro Green asked Stonecrest for a "consistency letter" to include with its permit application.

Stonecrest initially instructed Metro Green to request the letter from DeKalb County because, during the two-year transition period, Stonecrest was operating under the county's SWMP. The county, however, refused to write the letter, concluding from the information provided by Metro Green that the proposed facility was not consistent with its SWMP. Metro Green again requested a letter from Stonecrest. After consulting with legal counsel, Stonecrest's city manager wrote to EPD on October 31, 2018, stating:

3

The City of Stonecrest, Georgia was formed in 2017 and has not yet adopted a Comprehensive Solid Waste Management Plan. However, as the City is still in its initial transition period, the City continues to be part of the DeKalb County Solid Waste Management Plan. Additionally, the City intends to execute an Intergovernmental Agreement with the County to continue receiving Solid Waste services from the County and, therefore, continue to be part of the County Solid Waste Management Plan.

Based on the letters enclosed herewith dated April 24, 2018 and May 2, 2018, respectively, the Solid Waste Permit Application associated with Metro Green Recycling's proposed operation of a recycling Material Recovery Facility (MRF) located at 2450, 2534 and 2544 Miller Road and 5152 Snapfinger Woods Road in the City of Stonecrest, Georgia complies with local zoning and land use ordinances, as well as the DeKalb County Solid Waste Management Plan.

The EPD issued a solid waste handling permit to Metro Green approximately one year later, on October 1, 2019. In an accompanying letter, the EPD noted that although the permit was "now in effect," it was "subject to appeal for a period of thirty (30) days following its issuance, and [was] subject to modification or possible vacation if appealed." See OCGA § 12-2-2 (c) (2) (outlining administrative appeal procedures). No appeal was filed, construction of the facility commenced, and Stonecrest issued various building permits and a business license to Metro Green.

4

In August 2020, however, Stonecrest sued Metro Green to halt construction and operation of the facility.[2] The city alleged that it had erroneously issued a consistency letter to EPD, that the facility did not comply with DeKalb County's SWMP, and that Metro Green's solid waste handling permit was "illegal." Stonecrest requested a temporary restraining order, preliminary and permanent injunctions, and a declaratory judgment that the permit was null and void. On September 21, 2020, Stonecrest amended its complaint to add the EPD and Director Dunn as defendants. With respect to these new defendants, Stonecrest sought a declaratory judgment that EPD was not authorized to rely on Stonecrest's consistency letter and requested mandamus relief to compel EPD, through Dunn, to revoke Metro Green's permit.

The following day, the Southern Environmental Law Center ("SELC"), acting on behalf of an initiative within CHASE known as "Stop Metro Green," wrote to Dunn, requesting that EPD revoke Metro Green's solid waste handling permit and address rising community concerns regarding the Metro Green facility. Dunn responded as follows:

---

[2] Stonecrest also named DeKalb County as a defendant, but those claims are not at issue in these appeals.

5

As you may be aware, EPD and I were recently named as defendants in a complaint filed in the Superior Court of DeKalb County, Georgia . . . (the "Litigation"). The legal issues raised in your September 22nd letter overlap with those raised in the Litigation, as does your request that EPD revoke the Permit. Accordingly, at this time EPD may not comment on these matters. Following the resolution of the Litigation, EPD will assess next steps in light of the decision of the Court.

CHASE subsequently moved to intervene in the litigation. The trial court granted the motion, and CHASE filed a complaint in intervention, alleging claims for declaratory relief against Metro Green, EPD, and Dunn; mandamus relief against Dunn; and interlocutory injunctive relief against Metro Green.[3]

EPD and Dunn moved to dismiss the claims filed against them by Stonecrest and CHASE. Metro Green also moved to dismiss CHASE's claims. The trial court dismissed the CHASE claim for declaratory judgment against EPD, Dunn, and Metro Green, as well as Stonecrest's petition for mandamus against EPD and Dunn, but denied the remainder of the motions to dismiss. The various parties then filed cross-

---

[3] Like Stonecrest, CHASE alleged a claim for declaratory relief against DeKalb County. That claim is not at issue in these appeals. In response to the intervenor complaint, Metro Green filed five substantive counterclaims against CHASE. Three of those claims were stricken by the trial court pursuant to Georgia's anti-SLAPP statute, see OCGA § 9-11-11.1, and the remaining two were dismissed without prejudice.

motions for summary judgment. Following a hearing, the trial court (1) granted summary judgment to Stonecrest on its claims for a permanent injunction against Metro Green and declaratory relief against Metro Green, EPD, and Dunn; (2) granted CHASE's request for mandamus relief against EPD and Dunn; (3) denied EPD and Dunn's motion for summary judgment as to CHASE's mandamus claim; (4) denied EPD and Dunn's motion for summary judgment as to Stonecrest's complaint; and (5) denied Metro Green's motion for summary judgment.

EPD and Dunn appeal the trial court's order in Case No. A23A0655. Metro Green appeals the same order in Case No. A23A0656. In Case No. A23A0655, we reverse in part, vacate in part, and remand the case with direction. In Case No. A23A0656, we reverse.

*Case No. A23A0655*

Through its summary judgment rulings, the trial court granted Stonecrest's request for declaratory relief with respect to EPD and Dunn, concluding that Dunn acted outside of his authority by awarding a solid waste handling permit to Metro Green and declaring the permit null and void. It also granted CHASE mandamus relief against EPD and Dunn. Specifically, the trial court found that Dunn grossly abused his discretion in failing to investigate and reach a decision on SELC's request

7

that EPD revoke Metro Green's permit. EPD and Dunn challenge these findings on appeal, arguing, among other things, that Stonecrest failed to exhaust its administrative remedies and that CHASE has no clear legal right to mandamus relief. We agree.

1. *Stonecrest's Request for Declaratory Relief.* As a general rule, a party cannot obtain judicial review of an agency action unless that party first exhausts "all administrative remedies available within the agency." OCGA § 50-13-19 (a). "Long-standing Georgia law requires that a party aggrieved by a state agency's decision must raise all issues before that agency and exhaust available administrative remedies before seeking any judicial review of the agency's decision." *Dept. of Community Health v. Ga. Soc. of Ambulatory Surgery Centers*, 290 Ga. 628, 629 (724 SE2d 386) (2012) (citation and punctuation omitted). "Indeed, exhaustion is the usual rule whenever one aggrieved by an administrative decision seeks judicial relief of any sort from that decision, whether under the [Administrative Procedure Act] or in the form of an equitable remedy, an extraordinary remedy, or a declaratory judgment[.]" *Ga. Power Co. v. Cazier*, 303 Ga. 820, 823 (2) (815 SE2d 922) (2018) (citations and punctuation omitted). "Only in rare instances will the requirement of exhaustion be

8

relaxed." *Ga. Soc. of Ambulatory Surgery Centers*, 290 Ga. at 629 (citation and punctuation omitted).

(a) Despite available procedures for administrative review, Stonecrest did not appeal EPD's decision to grant Metro Green a solid waste handling permit. See OCGA § 12-2-2 (c); OCGA § 12-8-30.2. Such failure usually deprives a trial court of jurisdiction to consider a party's claims. See *We, the Taxpayers v. Bd. of Tax Assessors*, 292 Ga. 31, 35 (2) (734 SE2d 373) (2012). In this case, however, the trial court found Stonecrest exempt from the exhaustion requirement because, in the trial court's view, Stonecrest challenged EPD/Dunn's jurisdiction to act.

In *Ga. Soc. of Ambulatory Surgery Centers*, 290 Ga. at 630 (2), the Supreme Court recognized that "the exhaustion doctrine does not apply where the defect urged by the complaining party goes to the jurisdiction or power of the involved agency." (citation and punctuation omitted). To take advantage of this exception, a plaintiff must "attack[] the agency's assertion of jurisdiction on its face or in its entirety on the ground that it is not authorized by statute." Id. Claims that the agency acted ultra vires or failed to comply with the administrative process do not suffice. See id. Rather, the plaintiff "is required to allege that the agency . . . acted wholly outside its jurisdiction." Id. (citation and punctuation omitted).

9

Stonecrest contends, and the trial court concluded, that the City met this exception to the exhaustion requirement because it alleged that EPD lacked jurisdiction to issue a solid waste handling permit to Metro Green. Again, however, the defect alleged must involve more than an ultra vires agency action; only allegations involving conduct that is *wholly* outside the agency's jurisdiction triggers the exception. See *Georgia Soc. of Ambulatory Surgery Centers*, 290 Ga. at 630 (2).

EPD, through its director, has the authority to issue solid waste handling permits. See OCGA §§ 12-8-23.1 (a) (3) (A), 12-8-24. In conjunction with that authority, and prior to issuing the permit,

> the director shall require written verification to be furnished by the [permit] applicant . . . that the proposed facility is consistent with the local, multijurisdictional, or regional solid waste management plan developed in accordance with standards promulgated pursuant to this part subject to the provisions of Code Section 12-8-31.1 and that the host jurisdiction and all jurisdictions generating solid waste destined for the applicants' facility can demonstrate that they are part of an approved solid waste plan developed in accordance with standards promulgated pursuant to this part and are actively involved in and have a strategy for meeting the state-wide goal of waste reduction[.]

OCGA § 12-8-24 (g).

Metro Green submitted a compliance letter signed by Stonecrest's city manager stating that Stonecrest remained part of DeKalb County's SWMP and that Metro Green's permit application complied with its requirements. After considering the letter and other materials submitted by Metro Green, EPD issued the permit. Although Stonecrest now asserts that the statements in its compliance letter were incorrect, the fact remains that the letter was provided by Stonecrest and submitted to EPD.

This case does not involve a threshold issue of EPD jurisdiction; issuance of solid waste handling permits clearly falls within the agency's authority. See OCGA § 12-8-24 (a) ("No person shall engage in solid waste or special solid waste handling in Georgia or construct or operate a solid waste handling facility in Georgia, except those individuals exempted from this part under Code Section 12-8-30.10, without first obtaining a permit from the director [of EPD] authorizing such activity."). "Rather, the question [here] is whether [EPD] has properly exercised its authority to do so with respect to the challenged [permit]." *We, the Taxpayers*, 292 Ga. at 34 (1).

At base, Stonecrest objects to EPD's reliance on the compliance letter provided by its city manager. It asserts in its complaint that the city manager lacked authority to issue the letter and that EPD had notice from DeKalb County that Metro Green's facility was not consistent with the county SWMP. These criticisms, however, go to

11

EPD's procedure in analyzing the application materials provided by Metro Green. They do not allege that EPD acted entirely outside of its jurisdiction in granting the permit. See *Ga. Soc. of Ambulatory Surgery Centers*, 290 Ga. at 631 (2) (exception to exhaustion requirement did not apply where, rather than alleging that the agency acted wholly outside of its statutory authority, plaintiff asserted that the manner in which the agency conducted its work did not fully comply with the statute's procedural requirements).

Although Stonecrest seeks to characterize the permit issued by EPD as "a legal nullity in violation of local and state law," the city ultimately questions EPD's decision to rely on the materials in Metro Green's permit application. This is not a challenge to EPD's jurisdiction. Under these circumstances, the exception to the exhaustion requirement does not apply. See *Ga. Soc. of Ambulatory Surgery Centers*, 290 Ga. at 631 (2); *Tafel v. Lion Antique Cars & Investments*, 297 Ga. 334, 337 (2) (773 SE2d 743) (2015) ("substance, rather than nomenclature, governs pleadings") (citation and punctuation omitted); compare *Cravey v. Southeastern Underwriters Assn.*, 214 Ga. 450, 457 (3) (105 SE2d 497) (1958) (exhaustion of administrative remedies not required in case where "[t]he complaint . . . is that the suspension of the

[insurance] rate order is void, and not that the order is deficient from mere errors in passing on the merits.").

Stonecrest was required to exhaust its administrative remedies before bringing this declaratory judgment action against EPD and Dunn. Its failure to do so deprived the trial court of jurisdiction over the claim. See *We, the Taxpayers*, 292 Ga. at 35 (2). The trial court, therefore, erred in exercising jurisdiction and granting summary judgment to Stonecrest on the claim for declaratory relief. See id.

(b) EPD and Dunn assert on appeal — as they did below — that given Stonecrest's failure to exhaust administrative remedies, they are entitled to summary judgment on the declaratory judgment claim. We are unable, however, to reverse the trial court's denial of their motion for summary judgment. Instead, we must vacate the trial court's ruling in this regard and remand for further proceedings because "if the trial court truly lacks subject matter jurisdiction to decide a question, it has no power to enter a judgment on the merits." *First Christ Holiness Church v. Owens Temple First Christ Holiness Church*, 282 Ga. 883, 885 (655 SE2d 605) (2008); see also *We, the Taxpayers*, 292 Ga. at 35 (2). The proper remedy for Stonecrest's failure to exhaust administrative remedies is dismissal of its declaratory judgment claim. See

13

*Northeast Ga. Cancer Care v. Blue Cross & Blue Shield of Ga.*, 297 Ga. App. 28, 30 (1) (676 SE2d 428) (2009): OCGA § 9-11-12 (b) (1).

2. *CHASE's Request for Mandamus Relief.* In its intervenor complaint, CHASE sought mandamus relief against EPD and Dunn regarding SELC's letter request that EPD/Dunn revoke Metro Green's permit. Specifically, CHASE alleged that it had been "directly and adversely affected" by Dunn's failure to immediately revoke the permit. Asserting that Dunn grossly abused his discretion by not investigating and responding to the allegations in the letter, CHASE moved to compel Dunn through mandamus to address its concerns.

Mandamus relief may be granted only "if (1) no other adequate legal remedy is available to effectuate the relief sought; and (2) the applicant has a clear legal right to such relief." *Ga. Lottery Corp. v. 1100 Shorter Dollar*, 351 Ga. App. 688, 689 (832 SE2d 665) (2019) (citation and punctuation omitted). "A clear legal right to the relief sought may be found only where the claimant seeks to compel the performance of a public duty that an official or agency is required by law to perform." *Bibb County v. Monroe County*, 294 Ga. 730, 735 (2) (b) (755 SE2d 760) (2014). When performance is required, "a clear legal right to relief will exist either where the official or agency fails entirely to act or where, in taking such required action, the official or agency

14

commits a gross abuse of discretion." Id. But "where the applicable law vests the official or agency with discretion with regard to whether action is required in a particular circumstance, mandamus will not lie, because there is no clear legal right to the performance of such an act." Id.

Concluding that Dunn grossly abused his discretion by refusing to investigate and address CHASE's revocation request, the trial court ordered Dunn to "answer CHASE's [request] with a final decision[.]" Nothing in the operative legislation, however, required Dunn to respond differently to the request. As director, Dunn is empowered to supervise administration and enforcement of the Act, and he may conduct investigations to ensure compliance with the statutory scheme. See OCGA § 12-8-23.1 (a) (1), (4); see also OCGA § 12-8-21 (d). But we have not found, and CHASE has not cited, any provision requiring the director to treat a citizen complaint letter in any particular manner.

On appeal, CHASE argues that, because the director is responsible for ensuring compliance with the Act, Dunn "had a duty, by necessary implication, to determine whether CHASE's assertions were true and, if so, whether he needed to take action on Metro Green's Permit." See *Bland Farms v. Ga. Dept. of Agriculture*, 281 Ga. 192, 193 (637 SE2d 37) (2006) ("The duty which a mandamus complainant seeks to have

15

enforced must be a duty arising by law, either expressly or by necessary implication[.]") (citation and punctuation omitted). CHASE claims that Dunn's complete "fail[ure] to act . . . violated a clear legal duty to ensure compliance with the Solid Waste Management Act." Again, however, Dunn's general authority does not require him to respond to citizen complaint letters in a specified manner or pursuant to any particular timetable. On the contrary, OCGA § 12-8-29 grants the director discretionary authority to "investigate any apparent violation of this part and to take any action authorized under this part *as he deems necessary*." (emphasis supplied).

"[T]he mere authorization to act is insufficient [to support mandamus] unless the law requires performance of the duty." *Bland Farms*, 281 Ga. at 193. Dunn has discretion in the method and manner in which he investigates potential statutory violations. He was not required to immediately respond to or issue a quick "final decision" on CHASE's allegations. See *Southeast Ga. Health Sys. v. Berry*, 362 Ga. App. 422, 423-424 (868 SE2d 820) (2022) (statute's "discretionary language only vests [agency] with the authority to conduct investigations, and does not impose a statutory duty to conduct a specific investigation every time an allegation is made"); see also *Bland Farms*, 281 Ga. at 193 (although statute conferred on Commissioner of Agriculture general discretionary authority to protect the Vidalia trademark, it did

16

"not impose on him the express official duty to prohibit the use of other trademarks on Vidalia onions"). Accordingly, because CHASE did not have a clear legal right to the relief sought in its mandamus request, the trial court erred in granting summary judgment to CHASE and denying EPD/Dunn's request for summary judgment on this claim.[4]

## Case No. A23A0656

Metro Green challenges the trial court's summary judgment ruling in Case No. A23A0656, raising several claims of error.

3. *The Stonecrest Claims against Metro Green*. After declaring Metro Green's solid waste handling permit null and void, the trial court granted Stonecrest's request for a permanent injunction against Metro Green operations within the city, ordering that "Metro Green is permanently enjoined from engaging in any and all operations of its Facility unless and until it obtains a validly issued solid waste handling permit."

---

[4] We cannot agree with the trial court that Dunn acted "beyond [his] express authority," entitling CHASE to mandamus relief. As noted in Division 1 (a), Dunn and EPD did not exceed their jurisdiction in granting a solid waste handling permit to Metro Green, and we find no basis for concluding that Dunn acted outside of his authority with respect to CHASE's revocation request. See *Southeast Ga. Health Sys.*, 362 Ga. App. at 425 (agency did not act exceed its authority by declining "to initiate a formal investigation of an alleged [certificate of need] violation, a discretionary action under the relevant statutory scheme").

17

As discussed in Division 1 (a), however, Stonecrest failed to exhaust its administrative remedies regarding issuance of the permit, depriving the trial court of jurisdiction over the declaratory judgment claim. See *We, the Taxpayers*, 292 Ga. at 35 (2). It follows that the trial court erred in (1) granting Stonecrest declaratory relief, and (2) enjoining the operation of Metro Green's facility based upon that relief.

4. *The CHASE Complaint.* The only claim alleged by CHASE against Metro Green that potentially remains is for an interlocutory injunction of Metro Green's operations. We are uncertain whether this claim is still at issue. We note, however, that well before it ruled on the parties' summary judgment motions, the trial court granted CHASE's request for interlocutory relief against Metro Green after finding it likely that Metro Green's solid waste handling permit was invalid and that CHASE would prevail in its mandamus action against Dunn and EPD. Given our decision in Divisions 1 (a) and 2, the trial court's basis for granting the interlocutory injunction was erroneous. Accordingly, to the extent the trial court's order granting the interlocutory injunction remains in place, it is reversed. See *Benton v. Patel*, 257 Ga. 669, 674 (3) (362 SE2d 217) (1987) ("Because we have ruled that appellant has the legal right to foreclose, we hold that the superior court abused its discretion in granting the interlocutory injunction [prohibiting foreclosure].").

18

5. We need not address Metro Green's remaining claims of error, which are now moot.

In Case No. A23A0655, therefore, we reverse the trial court's grant of summary judgment to Stonecrest on its declaratory judgment claim against EPD/Dunn. We also vacate the trial court's denial of summary judgment to EPD/Dunn on this claim, and we remand so that the trial court can dismiss the declaratory judgment claim for failure to exhaust administrative remedies. As to CHASE's claim for mandamus relief against EPD/Dunn, we reverse the grant of summary judgment to CHASE, and we reverse the denial of summary judgment to EPD/Dunn. In Case No. A23A0656, we reverse the award of injunctive and declaratory relief granted to Stonecrest against Metro Green. And, to the extent the trial court's order granting CHASE interlocutory injunctive relief against Metro Green remains in place, it is reversed

*Judgment in Case No. A23A0655 reversed in part, vacated in part, and case remanded with direction. Judgment in Case A23A0656 reversed. Miller, P. J., and Hodges, J., concur.*

19